1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WINSTON & STRAWN LLP**
Glenn E. Westreich (SBN: 100457)
gwestreich@winston.com
Patrick T. Michael (SBN: 169745)
pmichael@winston.com
Marcus T. Hall (SBN: 206495)
mthall@winston.com
Laura K. Carter (SBN: 244956)
lcarter@winston.com
101 California Street, Suite 3900
San Francisco, California 94111-5894
Telephone:    415-591-1000
Facsimile:    415-591-1400

Attorneys for Plaintiff/Counter-Defendant
CNET NETWORKS, INC.

<div style="text-align:left; writing-mode:vertical;">Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894</div>

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

CNET NETWORKS, INC.

        Plaintiff

  vs.

ETILIZE, INC.,

        Defendant.

AND RELATED COUNTERCLAIMS.

Case No.: C 06-05378 MHP

**PLAINTIFF CNET NETWORKS, INC.'S OPPOSITION TO DEFENDANT ETILIZE INC.'S MOTION FOR LEAVE TO AMEND ANSWER AND COUNTERCLAIMS**

**[FILED UNDER SEAL PURSUANT TO CIV. LOCAL RULE 79-5]**

Date:      September 8, 2008
Time:      2 p.m.
Courtroom: 7
Judge: Hon. Marilyn H. Patel

# PUBLIC VERSION

# **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 1

II. NATURE AND STAGE OF THE PROCEEDINGS ......................................... 2

    A. Procedure of the Case .......................................................................... 2

    B. Etilize's Discovery – Or Lack of Diligent Discovery – In This Case ......................... 4

    C. Etilize's Motion to Bifurcate Its Own Antitrust Claims and Failure To Submit an Expert Report In Violation Of This Court's Scheduling Order ........................................................................................................ 5

    D. Etilize's Seeks to Amend To Add An Affirmative Defense and Counterclaim ......................................................................................... 6

III. LEGAL ARGUMENT. ...................................................................................... 6

    A. Standard of Law. ................................................................................... 6

        1. Standard for Motions to Amend, Generally. ............................... 6

        2. FRCP Rule 16(b) And The Patent Local Rules Impose A Good Cause Requirement .................................................................. 7

    B. Etilize Does Not Meet Any Standard For Amending Its Affirmative Defenses and Counterclaims ................................................................. 7

        1. This Court Should Deny Etilize's Request to Amend Because of Etilize's Undue Delay, Lack of Diligence and Dilatory Conduct ..................... 8

        2. This Court Should Deny Etilize's Motion to Amend Because Etilize's Requested Amendments Would Cause CNET Significant Prejudice ......................................................... 11

        3. Etilize's Alleged Claims of Inequitable Conduct and Walker Process Fraud Fail As a Matter of Law and Proposed Amendments Are Futile ........................................................... 13

            a. Standard for Inequitable Conduct. ................................... 13

            b. A Heightened Materiality and Intent Standard Are Required to Support *Walker Process* Fraud ...................... 14

            c. Etilize's Allegations Regarding the Liaison Reference Do Not Support a Valid Claim for Inequitable Conduct, Let Alone *Walker Process* Fraud ........................ 15

            d. Etilize's Allegations Regarding the Smartshop Processes Do Not Support a Valid Claim for Inequitable Conduct, Let Alone Walker Process Fraud, Rendering Etilize's Proposed Amendments Futile ...................................... 16

        4. Etilize Has Proposed These Amendments In Bad Faith ............... 20

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

IV.   CONCLUSION ..................................................................................... 21

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bonin v. Calderon*,
   59 F.3d 815 (9th Cir. 1995)..................................................................................... 7, 13

*Bruno Indep. Living Aids v Acorn Mobile Servs.*,
   394 F.3d 1348 .................................................................................................................... 8

*Burlington Industries, Inc. v. Dayco Corp.*,
   849 F.2d 1418 (Fed. Cir. 1988) ................................................................................... 14

*California Arch. Bldg. Prod. v. Franciscan Ceramics*,
   818 F.2d 1466 (9th Cir. 1987), cert. denied, 484 U.S. 1006 (1988) ....................... 11

*Cargill, Inc. v. Canbra Foods, Ltd.*,
   476 F.3d 1359 (Fed. Cir. 2007)..................................................................................... 13

*Critikon Inc. v. Becton Dickinson Vascular Access, Inc.*,
   120 F.3d 1253 (Fed. Cir. 1997)..................................................................................... 15

*Digital Control, Inc. v. Charles Mach. Works*,
   437 F.3d 1309 (Fed. Cir. 2006)..................................................................................... 14

*Dippin' Dots, Inc. v. Mosey*,
   476 F.3d 1337 (Fed. Cir. 2007)............................................................................... 14, 15

*E.I. Dupont De Nemours & Co. v. Phillips Petroleum Co.*,
   849 F.2d 1430 (Fed. Cir. 1988)..................................................................................... 14

*eSpeed, Inc. v. BrokerTec USA, L.L.C.*,
   480 F.3d 1129 (Fed. Cir. 2007)..................................................................................... 14

*In re Facius*,
   408 F.2d 1396 (C.C.P.A. 1969) ................................................................................... 17

*In re Hayes Microcomputer Products, Inc. Patent Litigation*,
   982 F.2d 1527 (Fed. Cir. 1992)..................................................................................... 14

*In re Katz*,
   687 F.2d 450 (C.C.P.A. 1982) ..................................................................................... 17

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992)........................................................................................... 7

*M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*,
   439 F.3d 1335 (Fed. Cir. 2006)..................................................................................... 15

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

iii

*McGlinchy v. Shell Chemical Co.*,
  845 F.2d 802 (9th Cir. 1988)............................................................................... 12, 13

*Miller v. Rykoff-Sexton, Inc.*,
  845 F.2d 209 (9th Cir. 1988)...................................................................................... 13

*Morongo Band of Mission Indians v. Rose*,
  893 F.2d 1074 (9th Cir. 1990)...................................................................................... 6

*Nunes v. Ashcroft*,
  375 F.3d 805 (9th Cir. 2004).................................................................................... 6, 7

*Sweaney v. Ada Cty.*,
  119 F3d 1385 (9th Cir. 1997)....................................................................................... 7

*US. v. Bell Helicopter Textron, Inc.*,
  417 F.3d 450 (5th Cir. 2005)...................................................................................... 15


**STATUTES**

35 U.S.C. § 102(b) ..................................................................................... 7, 17, 20

35 U.S.C. § 271(a) ........................................................................................... 3

35 U.S.C. § 271(g) ........................................................................................... 3


**OTHER AUTHORITIES**

37 C.F.R. § 1.56 ............................................................................................. 8

Fed. R. Civ. P. 15(a) ............................................................................... 6, 7, 11

Federal Rule of Civil Procedure, Rule 9 ................................................................... 15

FRCP Rule 16(b) ............................................................................................. 7

Rule 9 ...................................................................................................... 15

Rule 9(b) ................................................................................................... 15

Rule 11 ............................................................................................... 2, 5, 20

Rule 16(b) .............................................................................................. 7, 11

Rule 26(a) .................................................................................................. 13

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

## I. INTRODUCTION

Etilize's motion to amend to allege new inequitable conduct and Walker Process claims has no merit. And its assertion that CNET "failed to produce" discovery in this case "in an attempt to hide its inequitable conduct" is an outrageous accusation. (Motion to Amend at 5:10-11)

This case has been pending for two years, fact discovery is closed, expert reports have been submitted and there is no justification for Etilize's dilatory conduct in seeking to amend at this late date. Ironically, in its zeal to argue an absence of delay or prejudice, Etilize takes the position that "no new discovery would be necessary for the new claims." (Motion to Amend at 6:9-10.) Etilize cannot possibly take that position *and* bring this motion in good faith.

These are fraud and antitrust claims which Etilize must prove by clear and convincing evidence. Etilize has *not* served a single interrogatory in this case, has *not* taken the depositions of the prosecuting attorneys, has *not* taken the deposition of Mr. Krause (an alleged recipient of alleged undisclosed prior art), has *not* provided an expert report on its inequitable conduct defense and *Walker Process* fraud claim and has *not* even provided an expert report on its pending antitrust claims. Etilize has done absolutely nothing to prosecute the very serious causes of action it now asks this Court to allow.

Etilize's true motive is to take advantage of the "policy of favoring amendments . . . with extreme liberality," and then apply litigation pressure using unwarranted antitrust claims which Etilize will undertake no effort to prosecute. Indeed, that is exactly what Etilize has done with its pending and meritless "sham" antitrust litigation claim. Etilize's true motives are made clear by its own statements:



██████████████████████████████████████████

(See Etilize emails from Feb. – Mar. 2007, attached to the Declaration of Patrick T. Michael ("Michael Decl."), collectively as Exh. A)

Etilize's "sham" litigation claim is, in fact, a sham. Weeks before expert reports were due, and a year and a half after giving CNET an "unexpected nose bleed" and making sure the "whole world knows" about its antitrust counterclaims, Etilize sought to bifurcate its antitrust claims to avoid incurring the expense of expert reports. Following CNET's opposition, Etilize then made improper Rule 11 threats against CNET's counsel. And when this Court did not rule on the bifurcation motion, Etilize took matters into its own hands and simply failed to submit an expert report at all.

Etilize's motion to amend is another desperate effort to gain leverage using claims the Federal Circuit has recognized to be a "plague" on the courts. As explained below, Etilize's request is dilatory, prejudicial, futile and brought in bad faith. Etilize's motion should be denied.

## II. NATURE AND STAGE OF THE PROCEEDINGS

### A. Procedure of the Case

CNET filed its complaint against Etilize on August 31, 2006. (Docket No. 1.) On February 7, 2007, Etilize filed its Answer and Counterclaim, which incorrectly named CNET Channel, a division of CNET, as a party. (Docket No. 10.) Following clarification that CNET Channel was not a separate subsidiary entity, Etilize filed an Amended Answer and Counterclaim against CNET. (Docket No. 15.) In addition to counterclaims for declaratory judgment of non-infringement, unenforceability and invalidity (the "Infringement Counterclaims"), Etilize asserted counterclaims for Violation of Section 2 of the Sherman Act, Intentional Interference with Prospective Economic Advantage, Negligent Interference with Prospective Economic Advantage and Unfair Competition (the "Antitrust Counterclaims").

In support of its Antitrust Counterclaims, Etilize alleged that CNET committed a "wrongful act" by commencing "an objectively baseless patent infringement lawsuit against Etilize, despite being fully informed, on at least two occasions, that the process by which Etilize organizes and accumulates information does not infringe the '933 and '426 patents." (Docket No. 15 at ¶ 23.) The

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

asserted "facts" that Etilize has identified to support its contention that the lawsuit is "objectively baseless" are that CNET knew the "allegedly infringing processes of Etilize are manually driven and are practiced in Pakistan." (Michael Decl., Exhibit B, Etilize's Response to Interrogatory No. 13.) According to Etilize's CEO, Mr. Ahzar Hameed, Etilize is seeking ███████████████ ███████ in connection with its Antitrust Counterclaims. (Michael Decl., Exhibit C, Deposition of Azhar Hameed, 7/8/08 ("Hameed Depo."), at 148:8 – 149:13.)

The Initial Case Management Conference was held on April 17, 2007, pursuant to which the Court ordered the parties to mediation and permitted two depositions per side prior to mediation. (Docket No. 25.) Etilize chose not to take either of the two permitted depositions. Following the mediation, a Second Case Management Conference was held on August 27, 2007, pursuant to which the Court entered a Supplemental Case Management Schedule and Order setting the schedule in the case, including the following dates:

- June 2, 2008: Close of Fact Discovery and last day to designate experts
- July 1, 2008: Initial expert reports due based on burden of proof
- Sept. 5, 2008: Completion of expert discovery
- Oct. 20, 2008: Last day to file dispositive motions
- Feb. 16, 2009: Trial

(Docket No. 33.)

On September 5, 2007, Etilize filed a Motion for Summary Judgment re Jurisdiction addressing Etilize's contention that it cannot infringe because Etilize's allegedly infringing processes are practiced in Pakistan (one of the asserted "facts" for why CNET's lawsuit is allegedly "objectively baseless"). (Docket No. 36.) On November 26, 2007, this Court entered an Order granting Etilize's motion for summary judgment of non-infringement under 35 U.S.C. § 271(a) and denying Etilize's motion for summary judgment of non-infringement under 35 U.S.C. § 271(g). (Docket No. 70.) Despite this Court's ruling that Etilize can be held liable for infringement even where the processes are practiced in Pakistan, Etilize continued to maintain its Antitrust Counterclaims.

This Court held the Claim Construction hearing on February 20, 2008 and entered its Claim

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1   Construction Order on March 4, 2008.  (Docket No. 82.)  To support its non-infringement position

2   (and the other asserted "fact" for why CNET's lawsuit is "objectively baseless"), Etilize argued for

3   constructions that would exclude any manual/human interaction in the processes for creating product

4   catalogs.  This Court rejected Etilize's attempts to import limitations such as "automatically,"

5   "without human intervention or instruction" and "for the most part automatically" into the asserted

6   claims.  (Docket No. 82 at 10:12-13; 13: 26-28.)  Despite this Court's ruling that the asserted claims

7   are not limited to fully (or "for the most part") automatic processes, Etilize continued to maintain its

8   Antitrust Counterclaims.

9       On April 30, 2008, this Court entered an Order Modifying the Schedule Set Forth in the

10  Supplemental Case Management Order ("Scheduling Order").  The Scheduling Order did not change

11  the February 16, 2009 trial date but modified certain pretrial dates, including:

12      • June 20, 2008: Last day to designate experts

13      • **June 27, 2008: Close of Fact Discovery**

14      • **July 21, 2008: Initial expert reports due based on burden of proof**

15      • Sept. 25, 2008: Completion of expert discovery

16      • Nov. 10, 2008: Last day to file dispositive motions

17  (Docket No. 86.)

18      **B.    Etilize's Discovery – Or Lack of Diligent Discovery – In This Case**

19      Etilize did not propound a single interrogatory in this case.  The only written discovery Etilize

20  propounded consisted of two sets of requests for production to CNET.  CNET's served its responses

21  on May 14, 2008, the due date set forth in the Scheduling Order.  (Docket No. 86.)

22      Just before the discovery cut-off, Etilize noticed and took the depositions of a total of 5 fact

23  witnesses: the inventors of the patents-in-suit, Robin Walsh (June 20, 2008) and Tim Musgrove (June

24  23, 2008), and CNET employees Doug Schmidt (June 24, 2008), Steve Parrott (June 25, 2008) and

25  Greg Mason (June 26, 2008).  (Declaration of Michelle Gillette in Support of Etilize's Motion for

26  Leave to Amend ("Gillette Decl.") ¶ 5.)

27      Notably, Etilize waited until June 4, 2008 (just three weeks before the close of fact discovery)

28  to first indicate a desire to depose the inventors. (Michael Decl., Exh. D.) Etilize never requested the

1  deposition of the prosecuting attorneys on the patents-in-suit or any other person involved with the

2  prosecution of the patents-in-suit.  Etilize also never requested the deposition of Steve Krause.

3  (Michael Decl. ¶ 27.)

4        **C.**     **Etilize's Motion to Bifurcate Its Own Antitrust Claims and Failure To Submit an Expert Report In Violation Of This Court's Scheduling Order**

5

6        On June 26, 2008 (the day before the close of fact discovery), Etilize filed a Motion to

7  Shorten Time to hear Etilize's proposed Motion to Bifurcate (Docket No. 97.)  On July 2, 2008 (after

8  the close of fact discovery), Etilize filed its Motion to Bifurcate.  (Docket No. 102.)  The primary

9  grounds for Etilize's motion were that discovery disputes remained and that absent an "immediate"

10  bifurcation, Etilize will incur "substantial expense necessary to prepare" its expert reports for the July

11  21, 2008 due date.  (*Id.* at 4:21-5:2.)

12        On July 3, 2008, the Court issued an Order granting the Motion To Shorten Time, provided

13  CNET with an opportunity to submit an opposition and advised that the matter would be taken under

14  submission, without hearing or reply briefing.  (Docket No. 104.)  On July 14, 2008, CNET filed its

15  Opposition to the Motion to Bifurcate.  (Docket No. 105.)  Three days later, Etilize demanded that

16  CNET withdraw assertions made in its Opposition, improperly threatening Rule 11 sanctions if

17  CNET failed to do so.  (Michael Decl., Exhibits E and F.)

18        As of July 21, 2008, the date expert reports were due, this Court had not issued a ruling on

19  Etilize's Motion to Bifurcate.  Rather than comply with this Court's Scheduling Order or seek relief

20  from the Court under the Scheduling Order, Etilize took matters into its own hands.  Etilize provided

21  ***no expert report*** on its          Antitrust Counterclaims.

22        Etilize instead submitted a declaration from Dr. Daniel Levy stating that, "on information and

23  belief," CNET has not produced sufficient documents for him to prepare an expert report.  (See

24  Michael Decl., Exhibit G.)  Of course, CNET's document production was sufficient (and even if

25  insufficient, that would not excuse, or preclude the ability to prepare, an expert report).  The reality is

26  Dr. Levy has never seen CNET's document production in this case because Etilize ***never requested***

27  (not even as of this filing) clearance under the Protective Order for Dr. Levy to see CNET's

28  confidential documents.  (Michael Decl. at ¶9.)  Quite plainly, Etilize never intended to provide an

1     expert report on its ████████ Antitrust Counterclaims, regardless of this Court's Scheduling Order

2     or the outcome of its Motion to Bifurcate.

3        **D.**      **Etilize's Seeks to Amend To Add An Affirmative Defense and Counterclaim**

4        On July 23, 2008, Etilize advised CNET that it sought to amend its answer and counterclaims

5     to allege inequitable conduct and *Walker Process* claims based on CNET's alleged misconduct

6     regarding the purported Smartshop.com and Liaison references. (Gillette Decl., Exhibit A.) Etilize

7     also sought to meet and confer with CNET to discuss stipulating to allow Etilize to amend. (*Id.*) The

8     next day CNET conferred with opposing counsel to ascertain whether Etilize had any support for

9     these serious allegations. On July 25, 2008, CNET declined to stipulate to Etilize's request because

10    Etilize failed to provide any information that would support either alleged claim under the law, and as

11    such the proposed amendments were meritless and futile. (Gillette Decl., Exhibit A.) CNET further

12    explained that Etilize's proposed amendments have been unduly delayed by Etilize and that the

13    addition of the claims would unfairly prejudice CNET. (*Id.*) On July 31, 2008, Etilize filed its

14    motion to amend its answer and counterclaims. (Docket No. 143.)

15   **III.**     **LEGAL ARGUMENT.**

16        **A.**      **Standard of Law.**

17          **1.**      **Standard for Motions to Amend, Generally.**

18        The Federal Rules of Civil Procedure provide that leave to amend be "freely given when

19    justice so requires." Fed. R. Civ. P. 15(a). The Ninth Circuit has construed this rule broadly, requiring

20    that leave to amend be granted with "extraordinary liberality." *Morongo Band of Mission Indians v.*

21    *Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). In determining whether it should grant leave to amend a

22    complaint, the court must consider (1) the plaintiff's bad faith; (2) undue delay; (3) prejudice to the

23    defendant; (4) futility of amendment; and (5) whether the plaintiff has previously amended his or her

24    pleadings. *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004) (citing *Bonin v. Calderon*, 59 F.3d

25    815, 845 (9th Cir. 1995)), reh'g and reh'g en banc denied, 375 F.3d 810 (9th Cir. 2004), cert. denied.,

26    543 U.S. 1188 (2005).

27        Amendments proposing additional claims that fail as a matter of law are futile. *See Sweaney*

28    *v. Ada Cty.*, 119 F3d 1385, 1393 (9th Cir. 1997). Futility alone can justify the denial of a motion to

amend. *Bonin*, 59 F.3d at 845. Additionally, a court may deny a motion to amend "when the movant presents no new facts but only new theories and provided no satisfactory explanation for his failure to fully develop his contentions originally." *Id.*; *see also Nunes v. Ashcroft*, 375 F.3d 805 at 808.

### 2. FRCP Rule 16(b) And The Patent Local Rules Impose A Good Cause Requirement

While Etilize relies entirely on the liberal standard of Federal Rule of Civil Procedure 15(a), the heightened "good cause" standard of Rule 16(b) governs here. Federal Rule of Civil Procedure 16(b) provides for modification of the Court's Scheduling Order only upon a showing of "good cause." See also *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-09 (9th Cir. 1992) (once a scheduling order has been issued, a motion to amend the complaint is treated as a motion to amend the scheduling order and will be granted only upon a showing of good cause.)

Etilize's position that no additional fact discovery is required and that "no new discovery would be necessary" glosses over the fact that CNET is entitled to conduct fact discovery on Etilize's new claims, and that both fact discovery and the time for expert reports pursuant to this Court's Scheduling Order have closed. Etilize's requested amendment would necessitate a modification of the Scheduling Order, at a minimum adjusting expert report schedules. Such a modification requires "good cause" under Rule 16(b). "Good cause" is shown where the party seeking leave to amend has demonstrated sufficient diligence. *Johnson*, 975 F.2d at 609.

Further, with respect to Etilize's allegation that the "Smartshop process" is prior art under 35 U.S.C. § 102(b), Etilize was required to identify all alleged 102(b) prior art references at the time of its invalidity contentions. Pat. L.R. Rules 3-3(a) and 3-6(b). Neither Etilize's preliminary nor final invalidity contentions identify Smartshop, and thus, require amendment. (Michael Decl., Exhibit H & I.) The Patent Local Rules clearly state that any such amendment "may be made only by order of the Court, which shall be entered only upon a showing of good cause." Pat. L.R. 3-7. Thus, while amendments to the pleadings are permitted "when justice so requires," in this situation justice also requires a showing of "good cause."

### B. Etilize Does Not Meet Any Standard For Amending Its Affirmative Defenses and Counterclaims

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

### 1. This Court Should Deny Etilize's Request to Amend Because of Etilize's Undue Delay, Lack of Diligence and Dilatory Conduct

Etilize argues in its motion to amend that it seeks to "conform its claims to new facts that have been revealed through discovery." (Motion to Amend at 4:19-20.)   Yet the only mention of how such facts "have been revealed" is a general assertion that "the depositions revealing these new facts were taken on June 20, 23-26, 2008" and citation to the Gillette Declaration, which merely restates this general assertion and provides the names of the deponents.  (Id. at 6:7-8.)   Had Etilize any real "new facts," its motion certainly would provide at least some sort of explanation of what these "new facts" are and the context in which it learned such facts.

The "duty of candor and good faith" to the PTO, the breach of which can give rise to inequitable conduct or Walker Process fraud claims, is an obligation imposed on those substantively involved in the prosecution of the patent application.  *Bruno Indep. Living Aids v Acorn Mobile Servs.*, 394 F.3d 1348, 1351 n. 3;  37 C.F.R. § 1.56.  Yet, three of these deponents, Messrs. Schmidt, Parrott and Mason, while employees of CNET, had absolutely nothing to do with the prosecution of the patents-in-suit.  Etilize has never contended otherwise and it is unclear why these depositions are lumped into Etilize's "depositions revealing new facts."  Etilize may have learned "new facts" during the depositions of these individuals, but those facts would have nothing to do with Etilize's proposed inequitable conduct and Walker Process claims.

With respect to Messrs. Musgrove and Walsh, the inventors of the patents-in-suit, Etilize fails to identify the so-called "new facts" that were revealed.  Moreover, while Etilize claims it "has not delayed in seeking this relief," Etilize offers no explanation, nor can it offer a legitimate explanation, for why it waited until a month after final invalidity contentions were due (May 27, 2008) and just days before the close of fact discovery (June 27, 2008) to take the depositions of the inventors.

Etilize has long known of the two alleged prior art references that Etilize asserts as the basis for its new allegations, Liaison and Smartshop.  With respect to Liaison, Etilize inappropriately attempts to cast its discovery of "new facts" as a recent discovery for which CNET is to blame. Etilize states:

> Furthermore, in an attempt to hide its inequitable conduct, CNET failed
> to produce any information concerning its knowledge of the Liaison

prior art during discovery.  Instead, Etilize learned of CNET's
awareness of Liaison through Dr. Daniel P. Miranker, a co-founder of
the original Liaison Technologies and now Etilize's expert.

(Motion at 5:1012)

Etilize's charge that CNET committed discovery abuses to "hide its inequitable conduct" is a false accusation of wrongdoing and completely improper.  It has no place in this motion.  Apparently, what also has no place in Etilize's motion (or supporting declaration) is any mention of "when" Etilize actually learned of these so-called "new  facts" from Dr. Miranker.

Etilize has known of Liaison and has been working with Dr. Miranker since ███████████, just after CNET put Etilize on notice of its infringing conduct and ***before*** this litigation was even filed.  By ████████████, Etilize was already aware of the ███████████████████████ ████████████████ (See Michael Decl., Exhibit J, ETI 071350-51.), by ████████████ Etilize's attorneys had retained Dr. Miranker as a "confidential expert" (Michael Decl., Exh. K) and by ████████████████████████████████████ from Etilize were working with Dr. Miranker. ████████████████████████████████████████████████████████████

(See Michael Decl., Exhibit L, ETI 316545-47.)

To the extent Etilize is insinuating the June depositions revealed "new facts" regarding Liaison, that is incorrect.  Not a single deponent had even heard of Liaison or Dr. Miranker.

For example, Mr. Walsh testified:



(Michael Decl., Exh. M, Walsh Depo. at 17:12-23)

And Mr. Musgrove testified:



(Michael Decl., Exh. N, Musgrove Depo., at 102:10-18

Etilize's "new facts" relating to Liaison appear to be information Etilize has long possessed from its retained expert Dr. Miranker regarding a supposed 2000 "demonstration" and a 2005 Flash Demo and email with Steve Krause of CNET. (Motion to Amend at 4:27 – 5:8). Etilize certainly had all the pertinent facts available to it long before the filing of this motion. For over two years, Etilize has had the alleged Liaison prior art reference and Dr. Miranker at its disposal. If Etilize was aware of and wanted communications between one of the many employees of CNET and Dr. Miranker or Liaison, Etilize should have propounded a document request asking about Liaison or Dr. Miranker so CNET could perform the proper searches to determine if any such documents exist. Etilize did absolutely nothing of the sort.

Instead, it chose to sit on its own knowledge of discussions that its own expert had with Steve Krause (who did not even join CNET until 2005, and has nothing to do with the patents-in-suit), never noticed the deposition of Mr. Krause and now attempts to justify its delay by wrongly accusing CNET of intentionally failing to produce documents "in an attempt to hide its inequitable conduct."

With respect to the alleged Smartshop reference, again, Etilize has long known about Smartshop. The inventors of the patent-in-suit were both employed by Smartshop, during which time the application to Patent No. 6,535,880, the parent to the patents-in-suit was filed and the application that matured into the '933 patent was filed. CNET acquired Smartshop and its electronic catalog technologies in 2002 and the asset purchase agreement between Smartshop and CNET (which lists the application for the '933 patent) was produced to Etilize in this litigation on April 30, 2007 and is also part of the '426 file history. (Hall Decl, Exhibit X, CNI001872-1910.)

There is nothing "new" about the existence of Smartshop, its relationship to the inventors and patents-in-suit, or the fact that technologies at Smartshop may relate to the patents-in-suit. If Etilize

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1  wanted to investigate the potential for Smartshop's own technologies being prior art to the patents-in-

2  suit, Etilize had all the information available to it to conduct that investigation.  Despite its

3  knowledge of these facts, Etilize waited until June 4, 2008, more than a year after discovery

4  commenced and just weeks before the close of fact discovery, to even indicate a desire to take the

5  depositions of the inventors.  (See Michael, Decl., Exh. D.)   Etilize has yet to give any explanation

6  for its delay in taking the depositions of the inventors and its overall lack of diligence in investigating

7  its invalidity and unenforceability allegations, much less its proposed new claims for inequitable

8  conduct and Walker Process fraud.

9         Etilize should not be permitted to meander through the discovery process, wait until the 11th

10  hour to conduct its fact finding investigation and then claim newly discovered information that

11  justifies amendments to the counterclaim. Etilize was well aware of the Scheduling Order in this case

12  (or at least should have been). Yet, it chose to delay pursuing fundamental basic discovery that would

13  have provided the very information that it now claims justifies amending its counterclaims.

14         Etilize has failed to establish that it has acted diligently in investigating its potential invalidity

15  and unenforceability assertions, obtaining relevant evidence and developing the contentions

16  contained its proposed amendments.  This Court is well within its discretion to deny Etilize's motion

17  to amend on this basis alone, under either the standard of Rule 15(a), or the "good cause" standard of

18  Rule 16(b) and the Patent Local Rules.

19         **2.      This Court Should Deny Etilize's Motion to Amend Because Etilize's
              Requested Amendments Would Cause CNET Significant Prejudice**

20

21         Prejudice is a valid reason for a court to deny a party leave to amend.  *California Arch. Bldg.*

22  *Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1987), cert. denied, 484 U.S. 1006

23  (1988).  CNET will be significantly prejudiced by Etilize's proposed amendments, and this Court

    should deny Etilize's motion to amend.

24         The additional discovery and related time and expense that will be necessary to address

25  Etilize's proposed amendments will certainly prejudice CNET.  Etilize's position that it needs no

26  further fact discovery carries little weight.  As discussed below, if anything, that position merely

27  evidences a lack of good faith as these types of claims cannot seriously be prosecuted without proper

28

11

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

discovery. *See McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 809 (9th Cir. 1988) (If contention that opposing party would suffer no prejudice because discovery covered all the issues presented by the new claims was true, "delay in seeking leave to amend would be even more inexcusable."). Had Etilize proceeded with diligence, it could have filed its motions to amend well before the close of fact discovery and well before the start of expert discovery.

The proposed amendments concerning inequitable conduct and Walker Process fraud go far beyond merely conforming claims to new facts. Etilize is seeking to add new distinct inequitable conduct and Walker Process fraud claims which CNET will now have to prepare to defend. Even if Etilize's claim to need no new discovery is taken at face value, Etilize's motion to amend fails to account for other scheduling modifications that allowing its amendments would require. Whether or not Etilize is interested in fact discovery, CNET is absolutely entitled to conduct fact discovery on Etilize's extremely serious allegations of *Walker Process* fraud and inequitable conduct. CNET is entitled to take fact and corporate designee witness depositions, propound written discovery and any other fact investigation that it deems appropriate, including issuing third party subpoenas to companies such as Liaison. Thus, despite Etilize's willingness to forego fact discovery, the process is not that simple.

The surprise of Etilize's requested amendment and its so-called new facts further prejudices CNET. These facts were not identified in response to CNET's interrogatories, including interrogatories directed at Etilize's pending unenforceability allegations. (Michael Decl., Exh. O.) Moreover, Etilize's "expert" witness, Dr. Miranker, is also a percipient witness regarding Etilize's proposed inequitable conduct and Walker Process claims. (Motion to Amend at 5:4-7.) In addition, Dr. Miranker has recently submitted a declaration regarding his personal knowledge of the Liaison technology in support of Etilize's motion for summary judgment regarding invalidity. (Docket No. 142.) Despite his clear role as a percipient witness on matters for which Etilize bears the burden of proof, Etilize did not disclose Dr. Miranker on its Rule 26(a) statements (Michael Decl., Exh. Q) did not identify Dr. Miranker in responses to interrogatories and has not supplemented either as required under the Federal Rules. Etilize's failure to disclose the pertinent facts and percipient witnesses has certainly prejudiced CNET.

Further, Etilize's proposed counterclaims necessarily impact the expert schedule in this case. CNET has already provided its expert reports, including its infringement, damages and validity (rebuttal) reports. The expert discovery deadline set forth in the Scheduling Order is September 25, 2008. If Etilize's amendments are granted, CNET will necessarily be prejudiced if expert discovery is not reopened and additional expert reports are not allowed.

Conversely, reopening discovery and the expert process will necessarily require a complete modification of the current Scheduling Order including continuing the trial date. Such a modification will cause further delay and expense to the detriment of CNET. This Court should deny Etilize's motion to amend its affirmative defenses and counterclaims because doing so at this late stage would significantly prejudice CNET. *McGlinchy*, 845 F.2d 802 at 809.

### 3. Etilize's Alleged Claims of Inequitable Conduct and Walker Process Fraud Fail As a Matter of Law and Proposed Amendments Are Futile

In addition, the Court should deny Etilize's motion to amend because the "amendment would be futile." *Bonin*, 59 F.3d at 845 (futility alone can justify the denial of a motion to amend). An amendment is futile where no set of facts could be proved under the amendment that would constitute a valid and sufficient claim or defense. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Etilize's can prove no set of facts constituting valid inequitable conduct and Walker Process fraud claims, rendering its proposed amendments futile.

### a. Standard for Inequitable Conduct.

A defendant must prove inequitable conduct by clear and convincing evidence. To determine whether a patent was obtained through inequitable conduct, Etilize must prove whether ***a person having a duty of candor and good faith*** withheld or misrepresented information, or submitted false information, that was ***material*** to the examination of the patent application, ***and*** that this individual or individuals acted with an ***intent*** to deceive or mislead the PTO. *Cargill, Inc. v. Canbra Foods, Ltd.*, 476 F.3d 1359, 1363-64 (Fed. Cir. 2007) (emphasis added); *see also eSpeed, Inc. v. BrokerTec USA, L.L.C.*, 480 F.3d 1129, 1135 (Fed. Cir. 2007); *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed. Cir. 2006).

As the Federal Circuit has commented, the rise of unfounded inequitable conduct claims has become an absolute plague:

> The habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest grounds, to represent their client's interests adequately, perhaps. They get anywhere with the accusation in but a small percentage of the cases, but such charges are not inconsequential on that account . . . A patent litigant should be made to feel, therefore, that an unsupported charge of "inequitable conduct in the Patent Office" is a negative contribution to the rightful administration of justice.

*Burlington Industries, Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988); *see also In re Hayes Microcomputer Products, Inc. Patent Litigation*, 982 F.2d 1527, 1546 (Fed. Cir. 1992) (noting that the Federal Circuit "deplore[s] such unfounded accusations of inequitable conduct as occurred here"); *E.I. Dupont De Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1439 (Fed. Cir. 1988) ("Fraud in the PTO has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system.") (quoting *Kimberly-Clark v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed. Cir. 1984)).

### b. A Heightened Materiality and Intent Standard Are Required to Support *Walker Process* Fraud.

An even higher burden of proof exists for a *Walker Process* fraud claim. *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337 (Fed. Cir. 2007). "A finding of inequitable conduct does not by itself suffice to support a finding of *Walker Process* fraud, because inequitable conduct is a broader, more inclusive concept than the common law fraud needed to support a *Walker Process* counterclaim." *Id.* at 1346 (quotations omitted) (citations omitted). "To demonstrate *Walker Process* fraud, a claimant must make higher threshold showings of both materiality and intent than are required to show inequitable conduct....The heightened standard of materiality in a *Walker Process* case requires that the patent would not have issued but for the patent examiner's justifiable reliance on the patentee's misrepresentation or omission." *Id.* at 1346-47 (citation omitted). Similarly, when alleging fraud based on an omission, rather than a misrepresentation, there must be affirmative evidence of fraudulent intent separate from the fact of the omission. *Id.* at 1348 ("when Walker Process claimants

wield [alleged omissions from the PTO] as a 'sword' to obtain antitrust damages rather than as a

mere 'shield' against enforcement of the patent, they must prove deceptive intent independently")[1]

### c. Etilize's Allegations Regarding the Liaison Reference Do Not Support a Valid Claim for Inequitable Conduct, Let Alone *Walker Process* Fraud

As discussed above, the obligation to disclose information to the Patent Office is an obligation

imposed on all those "substantively" involved in the preparation and prosecution of the patent

applications. *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, 439 F.3d 1335, 1339 (Fed. Cir.

2006) (citing 37 C.F.R. § 1.56(a)); see also *Critikon Inc. v. Becton Dickinson Vascular Access, Inc.*,

120 F.3d 1253, 1256 (Fed. Cir. 1997).

Etilize's purported "new facts" regarding Liaison do not relate to any person substantively

involved in the preparation and prosecution of the patents-in-suit. That someone at CNET might

have "viewed a demonstration" from Liaison in 2000 is meaningless. This alleged demonstration

occurred in **2000**, prior to the time CNET acquired Smartshop, prior to the time inventors Musgrove

and Walsh worked at CNET and prior to the time prosecuting attorney did any work for CNET. Not

only does Etilize fail to identify (even generally) the alleged person at CNET who purportedly

viewed a demonstration, there is no allegation this fictional person had anything to do with the

prosecution of the patents-in-suit.

Likewise, Steve Krause's alleged awareness of Liaison in 2005 is of no consequence. By

2005, the '933 patent had already issued and the '426 was already filed. Mr. Krause was not an

inventor on the patents and was in no way involved with the prosecution of the patents. Indeed, if

Etilize had taken the time to propound an interrogatory about Mr. Krause, take his deposition or for

---

[1] Etilize's claims for inequitable conduct and Walker Process fraud must also meet the requirements of Federal Rule of Civil Procedure, Rule 9. At a minimum, Rule 9(b) requires allegations of the particulars of "who, what, when, where, and how of the alleged fraud." *US. v. Bell Helicopter Textron, Inc.*, 417 F.3d 450, 453 (5th Cir. 2005) (citations and quotation omitted). Etilize's proposed pleadings fall well short of that requirement. As an obvious example, Etilize's repeatedly alleges that "CNET knowingly, willfully and intentionally withheld material information . . . .evidencing a clear intent to deceive" and that "CNET, CNET's attorneys, and other agents responsible for prosecution of the CNET Patents . . . failed to disclose." CNET is a public company that had thousands of employees at the time of prosecution of the patents. Etilize's general allegations do not even approach the Rule 9 requirements and merely illustrate the futility of Etilize's proposed amendments.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

1    that matter, simply review documents produced in this case, they would know that prior to 2005, Mr.

2    Krause was not even employed at CNET. He was with a company called ExactChoice. Notably,

3    Etilize makes no allegation that Mr. Krause had any involvement, much less substantive involvement,

4    with the prosecution of the '426 patent. He did not.

5            Any alleged contact between CNET employees and Liaison was at most tangential, allegedly

6    occurred outside the timeframe and context of the prosecution of the patents-in-suit and cannot be

7    attributed to "CNET" as held by persons substantively involved with the prosecution of the patents in

8    suit.

9            Etilize's baseless allegation that "CNET failed to produce any information concerning its

10   knowledge of the Liaison prior art during discovery" "in an attempt to hide its inequitable conduct"

11   underscores the depths to which Etilize has reached to scrape together its inequitable conduct and

12   *Walker Process* claims. To the extent Etilize is alleging this so-called "attempt to hide" as one of its

13   "new facts," Etilize is conflating CNET's alleged "attempt to hide" information from Etilize with the

14   standard requiring a knowing, willful and intentional misrepresentation or omission **before the PTO**.

15   Etilize's allegations cannot support a valid inequitable conduct or Walker Process claim, making its

16   proposed amendments to futile.

        **d.      Etilize's Allegations Regarding the Smartshop Processes Do Not
17              Support a Valid Claim for Inequitable Conduct, Let Alone Walker
18              Process Fraud, Rendering Etilize's Proposed Amendments Futile**

19           Etilize's proposed inequitable conduct defense and *Walker Process* counterclaim premised on

20   Smartshop are also futile. First, and for clarification, Smartshop was acquired by CNET in May

21   2002. Thus, the alleged "Smartshop prior art" is not an alleged third party prior art reference. And,

22   necessarily, Smartshop's patentable inventions were disclosed to the PTO pursuant to the patent

23   applications that matured into issued patents. Accordingly, Etilize apparently contends that some

24   other, earlier "Smartshop process" ("used to compile a publicly available e-commerce catalog as

25   early as Fall 1999") is somehow "prior art" triggering a disclosure obligation to the PTO. (Proposed

26   Amended Answer at ¶ 39:25-26; Proposed Amended Counterclaims at ¶45:10-11.)

27           It is well established that an inventor's own work cannot be used to invalidate her own patents

28   **unless** it was on sale or publicly used more than a year before filing and gives rise to a statutory bar.

35 U.S.C. § 102(b); see also *In re Katz*, 687 F.2d 450, 454 (C.C.P.A. 1982); *In re Facius*, 408 F.2d 1396, 1406 (C.C.P.A. 1969) ("[C]ertainly one's own invention, whatever the form of disclosure to the public, may not be prior art against oneself, absent a statutory bar.").

The statutory bar is set forth in 35 U.S.C. Section 102(b), which provides one category of prior art and states:

> A person shall be entitled to a patent unless –
>
> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior the date of the application for patent in the United States.

35 U.S.C. § 102(b).

Thus, the alleged undisclosed "Smartshop process" can be prior art triggering a disclosure obligation only if Etilize can prove by clear and convincing evidence that "the ***invention*** was . . . in ***public use*** or on sale in this country more than one year prior" to the filing date of the patents-in-suit. *Id.* (emphasis added). Etilize's allegation that the "Smartshop process and technology uses a very similar process to the process that CNET has accused of infringing in this case" is not the standard. (Proposed Second Amended Counterclaims at ¶40.) A "similar process" is not "the invention" that triggers a statutory bar.

Likewise, Etilize's general allegation that "it performs each and every claim element of the asserted claims in CNET's Patents In Suit" is also insufficient. (Motion at 5:25-26; Proposed Second Amended Counterclaims at ¶41.) The allegation completely lacks specificity required to plead inequitable conduct or Walker Process fraud. It neither specifies the "process" alleged nor the "asserted claims" for which each and every claim element is allegedly performed.

Indeed, Etilize does not allege that the "inventions" of the patents-in-suit were in public use more than one year before the filing of the patents-in-suit. Instead, Etilize alleges non-disclosure of the "Smartshop.com process, technology and software products that were used to compile a publicly available e-commerce catalog available to the public as early as the Fall of 1999." (Proposed Second Amended Counterclaims at ¶45.) As Etilize knows, however, the "inventions" of the patents-in-suit are ***not*** the processes used at Smartshop in 1999 or 2000, or for that matter any point in time more than one year before the filing dates.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894



Messrs. Musgrove and Walsh, the inventors of the patents-in-suit, testified that [redacted]

[redacted]

(Michael Decl., Exh. N, Musgrove Depo., 78:17 – 80:4.)

[redacted]

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

[redacted]

(Michael Decl., Exh. N, Musgrove Depo. 88:8 – 89:11.)

[redacted]

(Michael Decl., Exh. M, Walsh Depo. 68:4 – 9.)

[redacted]

(Michael Decl., Exh. M, Walsh Depo.: 106:25 – 107:9.

Likewise, with respect to the '426 patent, the claimed inventions were [redacted].

[redacted]

(Michael Decl., Exh. N, Musgrove Depo., 201:14 – 2-2:14.)

To the extent Smartshop had "inventions," those inventions were disclosed to the PTO in the patent applications of the '933 and '426 patents. The processes that Smartshop used in 1999 were,

simply put, not "inventions." As such, the "Smartshop process and technology" for use with a e-commerce catalog are not "prior art" under section 102(b), giving rise to some sort of disclosure obligation. Etilize's attempt to assert that the earlier Smartshop.com processes were "inventions . . . in public use or on sale in this country, more than one year prior the date of the application for patent in the United States" cannot support a claim for inequitable conduct or Walker Process fraud, and therefore the proposed amendments are futile.[2]

### 4. Etilize Has Proposed These Amendments In Bad Faith

Etilize's proposed amendments evidence an on-going pattern of bad faith, further warranting a denial of its requested amendments. As set forth above, examples of Etilize's bad faith include its continued pursuit of a meritless "sham" litigation Antitrust Counterclaim, its request to then bifurcate its highly publicized ▮▮▮▮▮▮ Antitrust Counterclaims to avoid expense, its refusal to submit an expert report on its Antitrust Counterclaims, its improper Rule 11 threats and its improper accusations of discovery abuses in its motion to amend.

Likewise, Etilize's current position that "no new discovery would be necessary for the new claims" also evidences bad faith. Again, Etilize has done nothing to prosecute these very serious causes of action it asks this Court to allow, much less the necessary discovery that would be required to even attempt to establish by clear and convincing evidence both materiality of the alleged non-disclosures *and* intent to deceive the PTO. Etilize's desire to add these claims is driven by a motivation to gain leverage and apply pressure to CNET, regardless of the merits of the proposed amendments.[3]

Etilize's discovery conduct also evidences bad faith. Etilize has consistently frustrated CNET's reasonable efforts to obtain the information necessary for this case, including:

- Designing a strategy early on ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[2] Etilize's proposed amendments are also futile for the lack of an expert report. As mentioned above, Etilize chose not to provide an expert report on its pending Antitrust Counterclaims, and thus, has no expert report for the required antitrust elements Etilize must prove to support its proposed Walker Process fraud claim.

[3] Even prior to CNET's filing of this lawsuit, Mr. Azhar Hameed was preparing to assert "antitrust" or "malicious prosecution" counterclaims against CNET and planned to obtain "maximum mileage" out of this dispute. (See Michael Decl., Exh. Q, ETI 302459, ETI 303203-05, ETI 316565-66.)

██████████████████████████████████ (See Michael Decl., Exhibit R, ETI303177);

- Refusing to produce documents from Etilize Pakistan that are clearly in Etilize's possession, custody and control. (Michael Decl., Exh. S at pp. 59-65);

- Refusing to make knowledgeable witnesses from Etilize Pakistan available for deposition. (Michael Decl., Exh. S at pp. 68-70);

- Producing source code for ████████████ *after* filing its motion for summary judgment on non-infringement. (Michael Decl., Exh. T);

- Producing source code for ██████████ in San Francisco the same afternoon that Etilize's 30(b)(6) witness on source code was being deposed in Denver, Colorado *and* although knowing of its late production, refusing to continue the deposition and forcing CNET's counsel to travel to Colorado. (Michael Decl., Exh. U.);

- Producing a 30(b)(6) witness on source code who testified that he had no knowledge of the source code. (Michael Decl., Exhibit V, Baig Depo. at 154:25-155:4.);

- Attempting to designate other witnesses with purported knowledge of the source code, both who testified that they had no knowledge. (Michael Decl., Exh. W, Christensen Depo. at 86:17-24.) (Michael Decl., Exh. X, Khwaja Depo. at 122:4-8.).

Etilize has engaged in a consistent pattern of litigation tactics designed to gain leverage and frustrate CNET's ability to litigate this case. Etilize's motion to amend is just the latest example of those tactics.

## IV. CONCLUSION

Etilize's motion to amend fails to meet even the liberal rules regarding amending pleadings and falls short of meeting the "good cause" requirement for the proposed amendments. Etilize's proposed claims are dilatory, prejudicial, futile, and brought in bad faith, and Etilize motion should be denied.

Respectfully submitted,

Dated: August 18, 2008          WINSTON & STRAWN LLP

By:   /s/ Patrick T. Michael
      Glenn E. Westreich

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

Patrick T. Michael
Marcus T. Hall
LAURA K. CARTER
ATTORNEYS FOR PLAINTIFF AND
COUNTER-DEFENDANT CNET
NETWORKS, INC

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894