MANATT, PHELPS & PHILLIPS, LLP
J. BRUCE MCCUBBREY (Bar No. CA 038817)
E-mail: bmccubbrey@manatt.com
JERROLD F. PETRUZZELLI (Bar No. CA 077748)
E-mail: jpetruzzelli@manatt.com
MICHELLE GILLETTE (Bar No. CA 178734)
E-mail: mgillette@manatt.com
IMRAN KHALIQ (Bar No. CA 232607)
E-mail: ikhaliq@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

Attorneys for Defendant
ETILIZE, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CNET NETWORKS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ETILIZE, INC.,<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. C 06 5378 (MHP)<br><br>**ETILIZE INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF INVALIDITY OF THE '933 AND '426 PATENTS**<br><br>Date: September 8, 2008<br>Time: 2:00 p.m.<br>Courtroom: 7<br>The Honorable Marilyn Hall Patel |

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

**TABLE OF CONTENTS**

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | ARGUMENT | | 3 |
| | A. | The Liaison CE 3.0 User's Guide is a Printed Publication Under § 102(a)-(b) | 3 |
| | | 1. Etilize Is Not Combining References | 3 |
| | | 2. The Liaison Content Exchange 3.0 User's Guide and Software Was Available to the Public | 3 |
| | B. | The Liaison Content Exchange 3.0 User's Guide Is an Enabling Prior Art Publication Under § 102 | 5 |
| | C. | The Liaison CE Software and User's Manual Disclose The "Determining Step" of Claim 1 of the '933 Patent | 8 |
| | D. | The Liaison CE Software and User's Manual Discloses The "Grouping" Step of Claims 1, 39 and 52 of the '426 Patent | 10 |
| | E. | Other Issues Raised By CNET | 13 |
| III. | RELIEF REQUESTED | | 15 |

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Amazon.com*,
    239 F.3d at 1351 ................................................................................................................ 12

*Bristol- Myers Squibb Co. v. Ben Venue Labs., Inc.*,
    246 F.3d 1368 (Fed. Cir. 2001) ........................................................................................ 13

*Bruckelmyer v. Ground Heaters, Inc.*,
    445 F.3d 1374 (Fed. Cir. 2006) .......................................................................................... 4

*In re Donohue*,
    766 F.2d 531 (Fed. Cir. 1985) ............................................................................................ 6

*In re Epstein*,
    32 F.3d 1559 (Fed. Cir. 1994) .......................................................................................... 15

*In re Fox*,
    471 F.2d 1405, 176 USPQ 340 (CCPA 1973) ................................................................... 7

*In re Hall*,
    781 F.2d 897 (Fed. Cir. 1986) ............................................................................................ 4

*In re Morris Epstein*,
    32 F.3d 1559 (Fed. Cir. 1994) ................................................................................ 4, 5, 6, 7

*In re Wyer*,
    655 F.2d 221 (CCPA 1981) ................................................................................................ 4

*Levi Strauss & Co. v. Golden Trade, S.r.L.*,
    1995 U.S. Dist. LEXIS 22145, 1995 WL 7108227 (S.D.N.Y. Nov. 30, 1995) .................. 4

*Minnesota Mining and Manufacturing Co. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2002) .......................................................................................... 6

*Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*,
    424 F.3d 1347 (Fed. Cir. 2005) .......................................................................................... 6

*SRI Int'l, Inc. v. Internet Sec. Sys.*,
    511 F.3d 1186 (Fed. Cir. 2008) .......................................................................................... 3

*Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.*,
    431 F.2d 539 (5th Cir. 1970) ............................................................................................ 12

*Veritas Operating Corp. v. Microsoft Corp.*,
    2008 U.S. Dist. LEXIS 36230 (W.D. Wash. 2008) ............................................................ 5

*White v. Dunbar*,
    119 U.S. 47, 7 S. Ct. 72, 30 L. Ed. 303, 1886 Dec. Comm'r Pat. 494 (1886) .................. 12

**STATUTES**

35 U.S.C § 102 ............................................................................................................................ passim
35 U.S.C § 102(a) ....................................................................................................................... passim
35 U.S.C § 102(b) ....................................................................................................................... passim
35 U.S.C. § 103 ................................................................................................................................ 15
35 U.S.C. § 112 .................................................................................................................................. 6

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

## I. **INTRODUCTION**

The issue before the court on Etilize's Motion for Summary Judgment is whether Liaison Content Exchange 3.0 anticipates the asserted claims of the '933 and '426 patent under 35 U.S.C § 102. Etilize in its opening motion provided compelling evidence that the Liaison Content Exchange software as described in the Liaison Content Exchange 3.0 User's Guide, constitutes an anticipatory reference under § 102(a) and § 102(b). The Content Exchange 3.0 User's Guide is a printed publication that was available to the public and sold with the software over one year before the earliest filing and invention dates of the '933 and '426 patents. *See* Etilize MSJ at 5-6; Miranker Declaration in Support of Etilize's MSJ, ¶ 3.

Etilize also demonstrated in its motion, that each and every element of the asserted claims was unequivocally present in a *single reference* – the Liaison Content Exchange 3.0 User's Guide. To this end, Etilize discussed this single reference at length in its opening motion and provided detailed claim charts (Exhibits A and B to Etilize's MSJ) showing how each and every element of the asserted claims could be found in the *single reference* – the Liaison Content Exchange 3.0 User's Guide.[1]

Etilize has met its burden on this summary judgment motion by providing irrefutable factual evidence that the Liaison Content Exchange software was publicly available before the invention dates of the patents, and that each and every element of the claims can be found in a single printed publication. Every citation in Etilize's claim-by-claim and element-by-element analysis cites to the Liaison Content Exchange 3.0 User's Guide (attached as Exhibit C to Dr. Miranker's Declaration). *See* Etilize's MSJ on Invalidity at 14-25 and Exhibits A and B.[2]

CNET, on the other hand, conveniently ignores this fact and points to introductory sections of Etilize's brief to argue that Etilize is combining references or "cobbling" references

---

[1] The Court need only examine the citations for the claim-by-claim, element-by-element analysis provided by Etilize in its opening MSJ at 14-25 and its claim charts, Exhibits A and B to see that Etilize has shown that each and every element of the asserted claims is present and cited with respect to a *single* reference, the Liaison Content Exchange 3.0 User's Guide. Miranker Declaration, Exhibit C.

[2] In some situations, Etilize provides *additional* citations to the Liaison Express User's Guide or the '505 patent. However, each and every claim element includes a citation to a single reference – the Liaison Content Exchange 3.0 User's Guide.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1   together. This is not just misleading; but it is blatantly untrue. The background and factual
2   sections of Etilize's brief discuss the Liaison product chronology, starting with the first release of
3   Liaison Express in 1999 and the later release of Liaison Content Exchange 3.0 in 2001. Etilize
4   also discusses the problems addressed by the Liaison prior art – to aggregate product data for an
5   electronic product catalog, and the various customer uses, installations and publicly available
6   literature associated with these products. The '505 patent on which Dr. Miranker is an inventor,
7   and which patent describes aspects of the Liaison software, is also discussed briefly in the motion.
8   However, none of these Liaison references are combined in any ad-hoc manner as CNET
9   suggests. Rather, Etilize very carefully charted and discussed <u>the *single* Liaison Content
10  Exchange 3.0 User Guide</u> to avoid any suggestion of reference combination.

11  CNET, tellingly, spends 16 of 19 pages of its opposition brief discussing ancillary issues
12  such as Etilize's initial disclosures and various evidentiary/discovery objections without actually
13  focusing on the substance of the prior art. <u>*Less than 3 pages*</u> of CNET's entire opposition brief
14  (at 16-19) address the merits of the prior art. In these 3 pages, CNET argues that *only one claim
15  element* is missing from the Liaison CE 3.0 User's Guide. *See* CNET's Opposition at 16-19.
16  According to CNET, the following claim elements are purportedly missing from the Liaison CE
17  3.0 User's Guide:

- claim 1 of the '933 patent: "determining whether at least one phrase of said product phrase information is a product characteristic associated with a product category."
- claims 1, 39 of the '426 patent: "processing plural product information records into one or more groups based on which product information records are likely to correspond to the same product"; and
- claim 52: "grouping said product phrase information based on which product phrase information are likely to correspond to the same product and based on the characteristics of said product phrase information."

26  Indeed, CNET's validity expert, Mr. Gray, provides no further opinion on whether any
27  other claim elements are missing from the Liaison Content Exchange 3.0 User Manual. *See*
28  Khaliq Declaration, Ex. A, Gray Report on Validity at 32-39. Therefore, CNET has not disputed

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

2   NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
    RE INVALIDITY
    CASE NO. C 06 5378

the presence of the other claim elements of the asserted claims (claims 1 and 15 of the '933 patent, and claims 1, 39, 52, 14, 16, 20, 23 and 24 of the '426 patent) in the Liaison Content Exchange 3.0 software and User's Guide as discussed in Etilize's opening brief and claim charts. *See* Etilize's MSJ at 14-25 and Exhibits A, B.

Accordingly, the only remaining issue for the Court to decide is whether the Liaison Content Exchange 3.0 User's Guide discloses the "determining" and "grouping" steps of the asserted claims of the '933 and '426 patents. Although Etilize demonstrated how these elements were met in its opening papers and claim charts; here, Etilize will address the specific arguments raised by CNET and unequivocally show how these elements are disclosed in the Liaison Content Exchange 3.0 User's Guide and software.

## II. ARGUMENT

### A. The Liaison CE 3.0 User's Guide is a Printed Publication Under § 102(a)-(b)

#### 1. Etilize Is Not Combining References

CNET argues (on pages 6-7) of its opposition brief that Etilize is combining references to show anticipation under § 102. This is simply untrue. Etilize cites to the Liaison Express 2.0 User's Guide, Liaison Content Exchange 3.0 User's Guide and U.S. Patent No. 6,782,505 (the '505 patent) in the introduction and background sections of its motion to provide an overview and background of the Liaison product chronology, the problems to be solved by the Liaison products, and the associated Liaison patents and literature. However, it is manifestly obvious by reading Etilize's Motion at 14-25 and its claim charts (Exhibits A and B) that Etilize has provided support for disclosure of each and every claim element of the asserted claims within the four corners of a *single document* – the Liaison Content Exchange 3.0 User's Guide. Miranker Declaration, Ex. C.

#### 2. The Liaison Content Exchange 3.0 User's Guide and Software Was Available to the Public

"There are many ways in which a reference may be disseminated to the interested public. 'Public accessibility' has been called the touchstone in determining whether a reference constitutes a 'printed publication' bar under 35 U.S.C. § 102(b)." *SRI Int'l, Inc. v. Internet Sec.*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

3  NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

1  *Sys.*, 511 F.3d 1186, 1194 (Fed. Cir. 2008), citing *In re Hall*, 781 F.2d 897, 898-99 (Fed. Cir.
2  1986) (emphasis added). "A given reference is 'publicly accessible' upon a satisfactory showing
3  that such document has been disseminated or otherwise made available to the extent that persons
4  interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can
5  locate it." *Id., citing Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir.
6  2006)[3]. Courts have held that Section 102(a) requires only that the invention be accessible to the
7  public. *See Levi Strauss & Co. v. Golden Trade, S.r.L.*, 1995 U.S. Dist. LEXIS 22145, 1995 WL
8  710822, at *17 (S.D.N.Y. Nov. 30, 1995).

9  The Liaison CE 3.0 User's Guide is a publication that was made available to the public by
10 at least March 19, 2001 with the accompanying Liaison Content Exchange 3.0 software. *See*
11 Miranker Declaration, ¶ 3; Ex. A – Liaison CE 3.0 press release. These products were advertised
12 to the public and sold through Liaison's website over one year before the filing date of the CNET
13 patents. *Id.* Although CNET argues that the Liaison Content Exchange 3.0 User's Guide is not a
14 publication under § 102(a) or (b), CNET offers no contrary evidence to Dr. Miranker's sworn
15 testimony and corroborating factual evidence, which included the press releases from Liaison's
16 website announcing the product release for that date, as well as the User Guide itself with a
17 copyright date of 2001 (available with the software).[4] *See* Miranker Declaration, ¶ 3. Dr.
18 Miranker was one of the founders of Liaison technologies and has first hand knowledge of these
19 facts, including the customers that purchased and used the software. *Id.* at ¶¶1-3.

20 Furthermore, The Liaison CE 3.0 software itself, as described in the user manuals,
21 qualifies as prior art under §§ 102(a) and (b). As discussed *In re Morris Epste*in, 32 F.3d 1559

---

[3] A given reference is a "printed publication" if it was "publicly accessible" during the prior period. A party can establish that a given reference is "publicly accessible," by demonstrating that such document "has been . . . made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it and recognize and comprehend there from the essentials of the claimed invention without need of further research or experimentation." *See Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006) (quoting *In re Wy*er, 655 F.2d 221, 226 (CCPA 1981).

[4] *See In Re Morris Epstein*, 32 F. 3d 1559, 1564 (Fed. Cir. 1994 ("In the absence of evidence that the dates in the abstracts are not true dates of public use of the systems described therein, we will accept the abstracts as evidence of prior art and of the level of ordinary skill in the art.").

(Fed. Cir. 1994), abstracts, i.e., documents describing software can be used to support a finding that the software was "in public use or on sale" within the meaning of § 102(b).

> Appellant also points out that the software products that were "first installed" or "released" may have been different from the products as described in the later-published abstracts. Again, in the absence of evidence to support this speculation, we do not find appellant's argument persuasive. <u>To the contrary, we are persuaded by the relative importance of the various prior art features upon which the PTO relies when those features are considered in the context of the prior art products in which they appear.</u>
> ...
> <u>the abstracts -- support the legal conclusion that the products, including the features upon which the PTO has relied to reject the claims, were "in public use or on sale" within the meaning of section 102(b) prior to the critical date.</u>[5]

Similarly, in *Veritas Operating Corp. v. Microsoft Corp.*, 2008 U.S. Dist. LEXIS 36230 (W.D. Wash. 2008), the district court found that software as described in the associated user manuals qualified as proper prior art under § 102(a) and § 102(b). *Id.* at * 47-49. Therefore, the Liaison Content Exchange 3.0 software is prior art under § 102(a) and (b) and the Liaison Content Exchange 3.0 User's Guide is a printed publication under both § 102(a) and (b) because it was available to the public over one year before the respective filing dates (and invention dates) of the '933 patent (April 10, 2002) and '426 patent (filed September 11, 2003).

Notwithstanding CNET's challenges as to what material constitutes prior art under the various statutory 102 sections, Etilize has clearly demonstrating that the asserted claims are anticipated by the Liaison Content Exchange 3.0 User's Guide, since this document itself describes all elements of the claims within its four corners.

**B. <u>The Liaison Content Exchange 3.0 User's Guide Is an Enabling Prior Art Publication Under § 102</u>**

CNET argues that the Liaison Content Exchange 3.0 User's Guide is not enabling because "it provides insufficient information for one of ordinary skill in the art to create the system that performs the functions without undue experimentation." CNET's Opposition at 16, CNET's

---

[5] In *In Re Morris Epstein,* 32 F.3d 1559, the patent holder appealed the decision of the patent office which relied on publications post-dating the prior art software as evidence of the "release" and "installation" dates of the software and to further show the existence of features in the software product relied on prior to the critical date under § 102(b). The Court upheld the Board's finding that the published abstracts, describing the prior art software product, could be used as evidence that the software was in "public use or on sale" before the critical date under § 102(b) and that the software included the features relied upon by the PTO in making its anticipation rejections. *Id.* at 1566-1567.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

5     NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

arguments are misdirected.

The standard for enablement of a prior art reference for purposes of anticipation under section 102 differs from the enablement standard under 35 U.S.C. § 112.[6] *See Novo Nordisk Pharm., Inc. v. Bio-Technology Gen. Corp.*, 424 F.3d 1347, 1355 (Fed. Cir. 2005). Enablement for § 102, requires that "the prior art reference must teach one of ordinary skill in the art to make <u>*or carry out*</u> the claimed invention without undue experimentation." *Minnesota Mining and Manufacturing Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002)(emphasis added).

CNET's enablement argument is inapplicable to the Liaison CE 3.0 software, because there is no enablement requirement for a device that is in public use or on sale. The existence of the software itself is proof that the software was made. *See In re Morris Epstein*, 32 F.3d 1559, 1567-68 (Fed. Cir. 1994). The only issue is whether the sale relates to a device that embodies the invention. *Id.* The Liaison Content Exchange 3.0 User's Guide clearly evidences the features of the software that were on sale and in use.[7] Therefore, there is no question whether the software is enabling.

CNET's argument that the Liaison CE 3.0 User's Guide is not enabling is belied by the lack of enabling disclosure in its own patents. CNET and Mr. Gray argue that the Liaison prior art does not disclose source code, flow charts and diagrams that would allow one of ordinary skill in the art make the systems underlying the software disclosed in the prior art . *See* Declaration of Stephen Gray in Support of CNET Network Inc.'s Opposition to Etilize MSJ on Invalidity at 4:

> The specifics of how the Liaison Content Exchange and Liaison Express products function to perform those operations are not disclosed to the reader. Particularly, there are no disclosures in the form of diagrams, computer flow charts, or other step-by-step descriptions of how the Liaison technology carrier out its operations. Accordingly, there is insufficient information for a person of ordinary skill in the art to use in order to make and use a system that performs these functions without

---

[6] Although in is indisputable that the Liaison software was made, used and sold (see Miranker Declaration), the law does not even require that the subject matter of an anticipatory reference actually be made to determine whether the publication is enabling. *See In re Donohue*, 766 F.2d 531, 533 (Fed. Cir. 1985) ("It is not, however, necessary that an invention disclosed in a publication shall have actually been made in order to satisfy the enablement requirement.").

[7] Dr. Miranker will be producing copies of the actual software for the Liaison products that are in his possession in response to CNET's subpoena that was served on August 20, 2008. CNET will have an opportunity to question Dr. Miranker about the actual software and installation during his deposition which has been scheduled for August 29, 2008.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

undue experimentation.

The Federal Circuit rejected a similar enablement challenge in *In re Morris Epstein*, 32 F.3d 1559. *In re Morris Epstein*, the patent applicant argued that the software prior art references were not enabling because they purportedly failed to disclose salient features of the claimed software system. The Federal Circuit rejected this argument and upheld the decision of the Board of Patent Appeals and Interferences:

> On the issue of enablement of the EMPTOR and DIALOG references (as well as the abstracts of the software products), the Board found as follows:
>
> <u>With respect to appellant's argument that the publications lack diagrams, flow charts, and source codes that would enable one of ordinary skill in the art to practice the systems described in the publications, we find that the disclosure of appellant's system fails to provide the same detailed information concerning the claimed invention.</u> In the absence of such a specific description, we assume that anyone desiring to carry out such computerized warehousing and inventory control systems would know of the equipment and techniques to be used. See In re Fox, 471 F.2d 1405, 176 USPQ 340 (CCPA 1973). *Id.* at 1568.

CNET's enablement arguments fails for similar reasons. First, the CNET patents do not disclose any source code and detailed computer instructions, diagrams, flow charts, etc., that would allow one of ordinary skill in the art to *build* the system. Therefore, CNET cannot expect a level of disclosure in the prior art that is any more detailed than the descriptions in its patents. *See Id.* Regardless, the Liaison Content Exchange 3.0 User's Guide is an enabling reference with <u>528 pages</u> of detailed descriptions of software features, flow diagrams, methods and systems for aggregating product information. *See* Miranker Declaration in Support of Etilize's MSJ, Ex. C. Unlike CNET's own patents, which do not discuss source code or APIs (application programming interfaces), the Liaison Content Exchange 3.0 User's Guide even includes a chapter on how to write applications using the Content Exchange API for purposes of creating workspaces for aggregating data on both Windows and UNIX platforms. *See Id.*, Chapter 16 at 461.

Moreover, the asserted *method claims* are not directed towards source code, computer systems or computer architectures.[8] CNET's argument regarding what is enabling with respect to one of ordinary skill in the art (under either parties' definition) is inapplicable to the method

---

[8] The system and computer architecture claims are no longer at issue. The court previously granted Etilize's Motion for Non-Infringement under 271(a), finding that the only claims at issue were the method claims directed toward processes of creating the product catalog. *See* Docket No. 70, Court's Order at 7-8.

claims which are directed towards creating product catalogs, using the software, not writing software or building computer systems or architectures. Persons of ordinary skill in the art with respect to using the *methods* of the '933 patent and '426 patents are relatively lowly skilled computer operators. *See e.g.,* '933 patent, col. 17, ll. 40-61 (describing computer operators executing various software tools):

> Because of the present invention provides these distinct tools with distinct functions, <u>human editors having different skills and knowledge can be utilized for each of the tools. For instance, it takes a relatively lower level of skill and knowledge to execute validation tool 93 and product record creation tool 95,</u> whereas it takes a higher degree of skill and knowledge to execute property definition tool 80. <u>Therefore, the present embodiment allows efficient human resource management since the tools and their respective functions are preferably separated and more experienced human editors can be assigned to execute property definition tool 80 and the **less experienced human editors can be assigned to execute the other tools**</u>.

CNET's own patents describe human editors with varying degrees of skills to operate and *execute* the programs, not write and develop them. The Liaison Content Exchange 3.0 User's Guide would enable one of ordinary skill in the art to execute the software to carry out the steps of the '933 and '426 patents.

Finally, the method claims of deploying software to aggregate product information are exactly the types of methods described in the Liaison Content Exchange 3.0 User's Guide. *See* Miranker Declaration, Ex. C at 1 ("A common application [of Liaison CE] is the gathering of manufacturer product descriptions and specifications to populate a back-end database for an electronic catalog."). The Liaison Content Exchange 3.0 User's Guide discusses the software and methods to execute the software in even greater detail than the '933 and '426 patents. Thus, the Liaison Content Exchange 3.0 User's Guide is properly qualified as a prior art reference under § 102 that would enable one of ordinary skill in the art to carry out the claimed methods of the '933 and '426 patent.

### C. The Liaison CE Software and User's Manual Disclose The "Determining Step" of Claim 1 of the '933 Patent

CNET argues that the features in Liaison CE 3.0 for using schemas and glossaries to restrict extraction of product attributes to only those products associated with a product category

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

8   NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

does not meet the limitation of *"determining whether at least one phrase of said product phrase information is a product characteristic associated with a product category."* CNET focuses its argument on discussing features of the product without any relation to the plain and ordinary meaning of the claim language, the claim construction and the prosecution history of the '933 patent.

During the prosecution of the '933 patent, in distinguishing over the prior art, CNET clarified the meaning of the "determining" step:

> it should be clarified that as described in the Detailed Description, <u>the method of the present invention allows substantially automated determination of whether a particular phrase is indicative of a product category or a product characteristic associated with the product category</u>. For example, characteristics of memory, processor speed, hard drive capacity, etc. for a computer as the category. (See para. 54, 58, 59, and 71). <u>Thus, this aspect of the invention relates to the determination of what phrases are, in fact, characteristics of a product or product category (for ex. Mb for a computer)</u>, and not merely to the specific features provided on a particular model of product (for ex. 256 Mb of memory for a computer). Clearly, Kirsch et a1. and Call, alone or in combination, fails to disclose, teach, or otherwise suggest the step of determining whether at least one phrase of the product phrase information is a product property indicative of a characteristic of a product or a product category as presently claimed in claim 1.

Khaliq Declaration, Ex. B, pp. 95-111, '933 patent file history, Amendment dated Sept. 15, 2003, Remarks at 15-16.

In its opening motion, Etilize discussed several examples of how this step is carried out in Liaison CE and disclosed in the Liaison CE 3.0 User's Guide. *See* Etilize's MSJ at 17. First, through the use of a result schema, when a workspace is run, an automated determination is made whether a particular phrase on a web page is indicative of a product category or product characteristic. For example, if the product category is "printer" and the product characteristics of interest are "model", "resolution" and "speed", the workspace software will only extract product phrases for printers and for those characteristics associated with the printer category. *See e.g.,* Miranker Declaration, Ex. C at 66-70.

Furthermore, a determination of identifying product characteristics associated with product categories is also disclosed through the use of the "glossary manager". *See* Liaison Content Exchange 3.0 user's Guide, Chp. 14 at 387. Contrary to CNET' argument, the glossary manager is not limited to having the workspace search for synonyms of product characteristics

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Palo Alto

9     NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

(although even this function would read on the claims under CNET's broad infringement theories). The glossary manager also permits searching and extracting of product characteristics associated with product categories, by specifically comparing the searched data against pre-identified product categories or products to determine whether the product phrases fall within those categories or products. *See e.g.,* Liaison Content Exchange User's Guide at 405:

> When a glossary category is set as a format restriction, <u>the system compares the extracted values against all of terms in that category, then places into the data result only the values that appear in that category</u>. A restriction does not change an extracted value, rather places in the data result only the values that appear in the attached glossary as the preferred term. (emphasis added).

In other words, the system makes a determination of whether the extracted value (product phrase information) is a product characteristic associated with a product category. When the system compares the extracted terms to terms in the category, it is carrying out a determination step because if the system finds that the value extracted does not correspond to a product category, it will not place that value in the extracted results. *See e.g., Id.* at 406:

> <u>The preferred terms within the glossary category Remote Control behave as a format restriction for the Remote_Control attribute during a workspace run</u>. With this setting, the system uses the format restriction **to determine whether** <u>a value for the Remote_Control attribute is placed in the data result or skipped during a workspace run</u>. Because Remote Control is set as a format, <u>the system must find one of the synonyms or preferred terms listed in the Remote Control category on the page in order for any extracted values to be placed in the data result. If no matching term is found, the system skips the affected field but extracts the rest of the data record.</u> (emphasis added).

The above passage clearly and unequivocally discloses the "determining step": "with this setting, the system uses the format restriction **to determine whether a value** is placed in a data result..." based on whether it is identified in a product category. *Id.*

Therefore, there are no genuine issues of fact of whether the Liaison CE 3.0 software and User's Guide discloses all elements of claims 1 and 15 of the '933 patent; as all claim elements are indisputably present. Thus, the court should grant summary judgment of invalidity under 35 U.S.C. § 102(a) and (b) as a matter of law.

**D.    The Liaison CE Software and User's Manual Discloses The "Grouping" Step of Claims 1, 39 and 52 of the '426 Patent**

Liaison CE 3.0 software as discussed in the Liaison CE 3.0 User's Guide clearly discloses

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10    NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

"processing plural product information records from product information sources into one or more groups based on which product information records are likely to correspond to the same product," (claims 1 and 39 of the '426 patent) and "grouping said product phrase information based on which product phrase information are likely to correspond to the same product and based on the characteristics of said product phrase information (claim 52 of the '426 patent). In its opening motion and claim charts, Etilize described how product information records and product phrase information are grouped based on whether they correspond to the same product through the use of schemas and glossary managers. *See* Etilize's MSJ at 22. Schemas and workspace extraction processes group products records and product phrases for individual products based on characteristics of the product phrase information identified in the workspace training. *See e.g., Id.* at 368 (plural product records and the phrase information are grouped in a table during extraction based on whether the phrases are associated with specific products, e.g., products A, B, and C). Moreover, through the use of glossary managers, product information records can be analyzed for similarities and differences based on whether they contain certain preferred terms. *See Id.* Chapter 14 of Liaison CE 3.0 User's Guide.

CNET argues that the use of a taxonomy structure to group product information records cannot meet the limitation of the claims because of the distinctions CNET made over the Blutinger reference during the prosecution of the '426 patent. CNET cites to the prosecution history of the '426 patent:

> *claim 1 differs from the categorizing that is also recited in these claims. In particular, categorizing means that the product specification is classified under the taxonomy structure based upon the determined attributes. However, the recited initial processing of product information records into one or more groups does not fall under any taxonomy structure.... [but rather] information records are analyzed for similarities and differences, and associated together based upon which product information records are likely to correspond to the same product.*

CNET's Opposition at 19, Hall Decl., ¶14, Ex. M, at 27.

Etilize agrees with this interpretation of the claims and is not arguing that placing information in a simple taxonomy structure meets the limitations of the claims. Liaison CE can be used to filter and extract data corresponding to particular product categories and can further group product records or product phrase information into a database based on the likelihood of

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

11  NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

1  whether the extracted data corresponds to the same product. *See* Liaison Content Exchange 3.0

2  User's Guide, Chps. 3 and 14. Analyzing similarities and differences between product records in

3  Liaison CE can be set by defining any number of terms in a glossary manager. *Id.,* Chp. 14. For

4  example, if the glossary manager is set to extract data for the term "IBM Lenovo laptop

5  computer", only product records with this term will be extracted and placed in the data result.

6  This ensures that only product records belonging to the "IBM Lenovo laptop computer" are

7  extracted and grouped in the database defined by the schema. *See* Liaison CE User's Guide,

8  Chp. 14.

9  Even assuming, *arguendo*, that the Liaison functionality corresponds to mapping product

10 records into categories and taxonomies as described by CNET, this is the exact interpretation of

11 the claims that CNET took in its infringement contentions, which it now moves away from in its

12 response to Etilize's invalidity arguments. *See* Khaliq Decl., Ex. C, CNET's Infringement

13 Contentions, '426 claim chart. One cannot interpret a patent one way for the validity analysis and

14 a different way for the infringement analysis. *See, e.g.*, *Amazon.com*, 239 F.3d at 1351 ("A patent

15 may not, like a "nose of wax," be twisted one way to avoid anticipation and another to find

16 infringement.") (quoting *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc*., 431 F.2d 539, 544 (5th

17 Cir. 1970) (citing *White v. Dunbar*, 119 U.S. 47, 7 S. Ct. 72, 30 L. Ed. 303, 1886 Dec. Comm'r

18 Pat. 494 (1886).

19 In its infringement contentions, CNET argues that the "grouping" step (of claims 1, 39

20 and 52 of the '426 patent) is met by the creation of the taxonomy structure and the mapping of

21 products and attributes into categories of that taxonomy:

> Etilize maps (processes) thousands of products from a wide variety of sources to hundreds of categories (groups) based on product attributes. Etilize uses data capture standards to ensure that information is consistent and standard from vendor to vendor so as to allow product comparisons across vendors. This allows comparison of products across vendors to determine correspondence to the same product.
>
> "<u>Taxonomy & category development is our first step</u>. Let our team of taxonomy experts research, develop and maintain your most demanding catalog needs. <u>Building detailed category structures, developing extensive product attributes and assigning relevant parametric values is what we consider to be our core competency. Mapping thousands of products to hundreds of categories and maintaining those relationships requires tools, matured processes and experienced staff</u>."

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

12  NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

1 | *See* Khaliq Decl., Ex. C, CNET's Infringement Contentions, '426 claim chart.

Etilize argued in its summary judgment motion for non-infringement that it did not perform the "grouping" step because its ConQuire program is simply used to organize data records *after they had been collected.* ConQuire contains no intelligence for gathering product records for making an automated determination of whether product records or phrases belong to the same category. *See* Etilize's MSJ for Non-Infringement; Hameed Declaration; Christensen Declaration. This interpretation has not been contested by CNET. *See* CNET Opposition at 19, Hall Decl., ¶ 14, Ex. M at 27. Therefore, by CNET's own admission (citing to the prosecution history) to narrow its interpretation of the claims to argue over the prior art, CNET tacitly admits that Etilize cannot infringe claims 1, 39 and 52 of the '426 patent. Etilize respectfully requests the Court take this admission under consideration for its ruling on Etilize's summary judgment motion for non-infringement.

A well known axiom in patent law is "that which would literally infringe if later in time anticipates if earlier." *Bristol- Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368, 1378 (Fed. Cir. 2001). CNET's infringement contentions accusing Etilize of creating taxonomies and mapping product records into templates and categories is the same as CNET's interpretation of the Liaison CE 3.0 prior art. In other words, CNET is saying that the process of creating a taxonomy and putting product records in that taxonomy meets the "grouping" limitations of the claims. Therefore, even under CNET's own interpretation of the Liaison CE 3.0 product functionality, in view of its infringement contentions, CNET would have to admit that the prior art performs the "grouping" step.

Accordingly, for all the reasons discussed above and in Etilize's opening motion, Liaison CE 3.0 software and Liaison CE 3.0 User's Guide anticipates claims 1, 39 and 52 and dependent claims 14, 16, 20, 23 and 24 of the '426 patent.

### E. <u>Other Issues Raised By CNET</u>

CNET's objections to Dr. Miranker's Declaration on the basis that he was not disclosed as a percipient witness are baseless. Dr. Miranker is Etilize's expert and also the inventor and creator of the Liaison products. CNET has known of these facts for quite some time. Liaison

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

13  NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

1  sales representatives gave a presentation of Liaison technology to CNET in 2000. Miranker
2  Declaration, ¶ 10. CNET's employees also contacted Dr. Miranker back on February 16, 2005 to
3  inquire about "Liaison crawler/extractor" technologies for a software Flash Demo *which CNET*
4  *downloaded from Liaison*. *See* Miranker Declaration, Ex. E. Etilize has asked CNET to produce
5  any and all documents, including the Flash Demo of the Liaison software, but CNET has refused
6  to do so.[9] *See* Khaliq Decl., Ex. D, discovery correspondence dated 6/25 and 7/16.
7  Moreover, CNET's complaint that Dr. Miranker was not disclosed in Etilize's initial
8  disclosures is misleading. In its initial disclosures served on April 9, 2007, Etilize identified
9  witnesses including "retained experts to be disclosed at the proper time." Khaliq Declaration, Ex.
10 E, Etilize's Initial Disclosures. This is the same language CNET used in its initial disclosures
11 served on April 7, 2007, identifying "various expert witnesses who have not yet been designated."
12 Khaliq Declaration, Ex. E, CNET's Initial Disclosures. Etilize then disclosed Dr. Miranker as an
13 expert in this case on June 20, 2008 pursuant to the Court's Scheduling Order. Khaliq
14 Declaration, Ex. G, Etilize's Expert Witness Designation. Etilize has also made Dr. Miranker
15 available for deposition on August 29, 2008 pursuant to CNET's request. *See* Khaliq Declaration,
16 Ex. H, e-mail correspondence dated 8/19/08. Therefore, CNET will have the opportunity to
17 question Dr. Miranker in his upcoming deposition on August 29, 2008 on his declaration, expert
18 reports, and facts which CNET characterizes as "percipient testimony".
19 CNET has used every opportunity in this case to attempt to strike relevant evidence
20 including lodging frivolous objections to Dr. Miranker which has prevented Etilize's expert from
21 reviewing and considering important evidence regarding the alleged conception and reduction to
22 practice of the CNET patents and information concerning purported patented product
23 embodiments.[10]

---

[9] The only logical conclusion that Etilize can reach from CNET's refusal to provide any information it had in its possession on Liaison products is that this is a continuing part of CNET's intentional effort to conceal information which it had in its possession and which it did not provide to the USPTO pursuant to its duty to disclose material prior art to the patent office known by its inventors and employees.

[10] Etilize's counsel made numerous written representations to CNET that Dr. Miranker is no longer involved with Liaison since he sold the company back in 2001 except for a brief consulting arrangement as a part of the settlement severance package between Dr. Miranker and Liaison which is no longer in effect. CNET continues to object to Dr. Miranker serving as an expert in this case despite written reassurances by

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

14  NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

Finally, Etilize's disclosure of Liaison software products in its Final Invalidity Contentions, served May 27, 2007 as compared to the actual publications evidencing these software products which were disclosed in Etilize's Preliminary Invalidity Contentions makes no difference under 35 U.S.C. § 102 or § 103. The software products as evidenced by the literature are prior art. *In re Epste*in, 32 F.3d 1559 (Fed. Cir. 1994)( abstracts, i.e., documents describing software can be used to support a finding that the software was "in public use or on sale" within the meaning of § 102(b)). Etilize amended its Final Invalidity Contentions to include language on the actual software products and installations to specifically put CNET on notice of these facts and avoid any confusion as to what is being asserted as prior art. *See* Khaliq Declaration, Ex I, Etilize's Final Invalidity Contentions. Etilize also put CNET on notice of the Liaison software products and installations in Dr. Miranker's Invalidity Expert Report served on July 21, 2008. Khaliq Declaration, Ex. J, Miranker Invalidity Report at 32-40. Therefore, CNET has had adequate notice of both the software and the prior art publications discussing the software, and has suffered no prejudice as a result of these disclosures.[11]

## III. **RELIEF REQUESTED**

Etilize has shown, by clear and convincing evidence, that each and every claim element of the asserted claims is present in the Liaison CE 3.0 User's Guide. Etilize respectfully requests that the Court grant Etilize's Motion for Summary Judgment on the invalidity of claims 1 and 15 of the '933 patent and claims 1, 14, 16, 20, 23, 24, 39 and 52 of the '426 patent as a matter of law.

---

Etilize's counsel (and Dr. Miranker) that Dr. Miranker no longer works or consults in this industry and that his publishing activities have nothing to do with the technology in this case. *See* Khaliq Declaration, Ex. K, Letter to the Court dated July 25, 2008. Dr. Miranker has signed the Protective Order in this case and CNET has failed to identify any specific activities by Dr. Miranker, as it is required to do so, that would pose a "risk of harm" to CNET outweighing the safeguards in place under Protective Order. *See* Docket No. 59, section 7.4.

[11] Dr. Miranker is no longer involved with the current Liaison technologies company. If CNET wished to acquire the current or past Liaison products it could have easily purchased or subpoenaed those products from Liaison Technologies. In response to CNET's subpoena served August 10, 2008, Dr. Miranker will be producing any and all documents within Dr. Miranker's possession related to Liaison, including any copies of software that he has in his possession.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

15 NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378

| | | |
|---|---|---|
| Dated: August 25, 2008 | | MANATT, PHELPS & PHILLIPS, LLP |

By: /s/ Imran Khaliq
　　J. Bruce McCubbrey
　　Michelle Gillette
　　Imran Khaliq
　　*Attorneys for Defendant and Counterclaimant*
　　ETILIZE, INC.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

16　NOTICE OF MOTION RE ETILIZE, INC.'S MSJ
RE INVALIDITY
CASE NO. C 06 5378