1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CNET NETWORKS, INC.,

          Plaintiff,

  v.

ETILIZE INC,

          Defendant.

_____/

No. C 06-5378 MHP

**MEMORANDUM & ORDER**

**Re: Defendant's Motions for Summary Judgment on Invalidity and to Amend Answer and Counterclaims**

      Plaintiff CNET Networks, Inc. ("CNET") filed this action against defendant Etilize, Inc. ("Etilize"), alleging infringement of United States Patent No. 6,714,933 ("the '933 patent") and its continuation-in-part, United States Patent No. 7,082,426 ("the '426 patent") (together, "the patents-in-suit"). These patents generally relate to methods and processes of compiling information about consumer products into catalogued databases for online merchants. The court recently ruled on Etilize's motion for summary judgment on non-infringement, granting the motion as to the '426 patent and denying the motion as to the '933 patent. Now before the court is Etilize's motion for summary judgment of invalidity of both patents under 35 U.S.C. § 102(b) based on anticipation due to printed prior art. Etilize has also moved to amend its answer and counterclaims, to add an affirmative defense for inequitable conduct and new counterclaims for *Walker Process* fraud. CNET opposes both motions. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

United States District Court
For the Northern District of California

1   BACKGROUND

2          Plaintiff CNET is a digital media company that provides customers with a central shopping

3   portal from which they can search for product information and purchase products from a variety of

4   vendors. Pl.'s Opening Brief at 4. Defendant Etilize is a company that markets and sells electronic

5   product catalogs stored on a server. Hameed Dec. ¶ 6. CNET filed suit against Etilize on August

6   31, 2006, asserting claims for infringement of two patents related to methods and systems for

7   aggregating product information to create electronic purchasing and cataloguing systems of goods

8   and services. Further details regarding the parties' background and the technology at issue in this

9   action can be found in prior orders issued by the court. See, e.g., CNET Networks, Inc. v. Etilize,

10  Inc., 528 F.Supp.2d 985 (N.D. Cal. 2007) ("First Summary Judgment Order") and CNET Networks,

11  Inc. v. Etilize, Inc., 547 F.Supp.2d 1055 (N.D. Cal. 2008) ("Claim Construction Order"),

12  respectively.

13         On February 7, 2007, Etilize filed its original answer and counterclaims. On March 23,

14  2007, upon stipulation and leave of court, Etilize filed a first amended answer and counterclaims.

15  On March 19, 2008, the court issued a stipulation and order modifying the case schedule and setting

16  forth various deadlines, including the following: May 7, 2008 for Final Infringement Contentions;

17  May 26, 2008 for Final Invalidity Contentions; and June 27, 2008 for close of fact discovery. On

18  June 9, 2008, Etilize moved for summary judgment that its accused products do not infringe CNET's

19  '933 and '426 patents, either literally or under the doctrine of equivalents. The case schedule was

20  again modified so that oppositions and replies to that motion were filed prior to the August 11, 2008

21  hearing.

22         On July 31, 2008, two days after filing its reply brief in support of its summary judgment

23  motion for non-infringement, Etilize filed a second summary judgment motion for invalidity of

24  claims 1 and 15 of the '933 patent and claims 1, 14, 16, 20, 23, 24, 39 and 52 of the '426 patent.[1]

25  Etilize argues that those claims are invalid based on anticipation under 35 U.S.C. section 102(b),

26  because the claimed subject matter was described in various Liaison Technology products and

27  services that were available more than one year prior to April 10, 2002, the earliest effective filing

28  date of the '933 application. At the same time, Etilize moved to amend its answer and counterclaims

2

United States District Court

For the Northern District of California

1  for a second time.  Etilize alleged that new facts revealed through discovery established grounds to

2  plead an affirmative defense for inequitable conduct and new counterclaims for *Walker Process*

3  fraud.  In particular, Etilize contends that CNET filed this lawsuit knowing that the '933 and '426

4  patents were invalid after having failed to provide available material information regarding

5  invalidating prior art to the United States Patent and Trademark Office ("USPTO").

6      Details of the asserted patents are provided in the court's Claim Construction Order.  The

7  claims at issue in the present summary judgment motion are summarized below.

8      There are two claims at issue for the '933 patent.  Claim 1 of the '933 patent claims as

9  follows:

10      A method of aggregating product information for use in a product database
       including various products arranged in product categories, the product information

11     being collected from a plurality of sources in a networked computer environment
       regarding products of a product category comprising the steps of:

12

13         generating a crawler from a server interconnected to the network computer
           environment to visit the plurality of sources;

14         gathering product phrase information from each of the plurality of sources
           via said crawler; and

15

16         determining whether at least one phrase of said product phrase information
           is a product characteristic associated with a product category;

17         wherein said crawler utilizes computational linguistics to gather said
           product phrase information which includes a phrase and at least one

18         characteristic of said phrase.

19  '933 patent at 18:49–65.  Claim 15 depends upon the method of claim 1.  If the independent claim is

20  not found invalid for anticipation, the dependent claim cannot be either.

21      There are eight claims at issue for the '426 patent—Claims 1, 14, 16, 20, 23, 24, 39 and 52.

22  Of these only claims 1, 39 and 52 are independent while the rest are dependent.

23      Claim 1 of the '426 patent claims as follows:

24      A method of creating a product catalog stored on computer readable media by
       aggregating product information from a plurality of product information sources

25     having disparate formats for product information and storing the information in a
       taxonomy, said method comprising:

26

27         processing plural product information records from the product information
           sources into one or more groups based on which product information

28         records are likely to correspond to the same product;

3

United States District Court
For the Northern District of California

1

           correlating a unique product ID corresponding to the product associated with each of said groups to identify the product;

2

3

           electronically comparing each identified product to categories of a taxonomy to determine a category for the identified products in the taxonomy; and

4

5

           electronically parsing the product information records corresponding to each group to electronically determine attributes for each categorized product based on the product information records;

6

7

           electronically generating product specifications based on the determined attributes; and

8

           storing the product specification in the corresponding determined categories of the taxonomy.

9

'426 Patent at 36:22–45.  Claims 14, 16, 20, 23 and 24 depend upon claim 1.

10

11

       Claim 39 of the '426 patent is substantially similar to claim 1.  However, claim 39 does not

12

recite the step of storing information comprising the product catalog in a taxonomy.  Furthermore,

13

claim 39 requires repeating the processing and correlating steps after performing the comparing step

14

to revise the groups in which the product information records belong.  See '426 patent at

15

39:66–40:23.[2]

16

       Claim 52 of the '426 patent claims as follows:

17

A method of aggregating product information from a plurality of product information sources in a networked computer environment comprising the steps of:

18

           generating a crawler from a server interconnected to the network computer environment to visit the plurality of sources;

19

20

           gathering product phrase information and characteristics of said product phrase information from each of the plurality of sources via said crawler;

21

           grouping said product phrase information based on which product phrase information are likely to correspond to the same product and based on the characteristics of said product phrase information;

22

23

           electronically parsing said grouped product phrase information to determine attributes for each product based on at least one of the product phrase information and the characteristics of said product phrase information; and

24

25

           creating a catalog of products based on the determined attributes.

26

'426 patent at 41:36–56.

27

       In its motion for summary judgment, Etilize's points to alleged commercially available

28

products by Liaison Technology, a company founded in 1998 that developed and sold e-commerce

4

United States District Court

For the Northern District of California

software.  Etilize relies on a number of different "anticipatory references" that refer to different Liaison Technology products and services that Etilize alleges were available between 1999-2002. Miranker Dec., Exh. A.  The two software products to which Etilize refers are:  Liaison Express and Liaison Content Exchange.  Id. ¶ 3.  The printed references to which Etilize refers include: Liaison Press Releases; Liaison Express User's Guide, versions 2.0 and 3.0; Liaison Content Exchange User Guide, version 3.0; and U.S. Patent No. 6,782, 505, which Etilize alleges claims aspects of the Liaison Technology products.  See id. ¶¶ 3-4, Exhs. B, C, D.  In its reply, Etilize focuses on one of them:  The Liaison Content Exchange 3.0 User's Guide ("Liaison CE User Guide"), stating that the other references simply provide an overview and background.  Def.'s Reply Brief in Support of Its Motion For Summary Judgment of Invalidity of the '933 and '426 Patents ("Def.'s SJ Reply"), 3:15-19.

I.      Liaison CE User Guide

         Etilize contends that the Liaison CE User Guide describes a Liaison product—Liaison Content Exchange (CE)—that provides an automated system of extracting, aggregating and delivering supplier catalog content to eMarketplaces and large manufacturers, with the descriptive content necessary to drive purchasing decisions.  Miranker Dec., Exhs. A & C.  In particular, Etilize argues that the Liaison CE User Guide describes software that combines product catalog creation and management, programmable Internet crawlers, website wrapping using a computational linguistic method, data transformation and product catalog loading.  Id. ¶ 8.  Etilize also contends that Liaison CE software allows a user to automatically aggregate product information by deploying crawlers that use computational linguistics to parse data from web pages.  Miranker Dec., Exh. C, see Ch. 3 & 13.  In particular, Etilize asserts that the software parses product phrase information appearing on web pages using computational linguistics that apply mapping properties to determine whether a product phrase corresponds to a particular product attribute belonging to a product category, and extracting and storing the results into a  database.  Id., summarized at 60-61.

         CNET has opposed both motions.  It argues that Etilize has failed to show a lack of triable issue of fact concerning the alleged anticipation of the '933 and '426 patents.  CNET argues that

United States District Court

For the Northern District of California

1   Etilize's use of several Liaison references in its validity challenge runs afoul of the courts'

2   interpretation of 35 U.S.C. section 102(b) that a single reference must disclose each and every

3   element of the claimed invention, and in any event, none of the Liaison references is prior art to its

4   '933 or '426 patents.  CNET also raised numerous procedural deficiencies in Etilize's briefs and

5   actions in this litigation, including alleged failures to follow disclosure rules for patent cases in this

6   district.  In particular, CNET objects to Etilize's use of Dr. Daniel Miranker as an expert witness and

7   states that Dr. Miranker's testimony is unsupported inventor testimony that cannot establish a

8   publication date for the Liaison technology products and services.  More fundamentally, CNET

9   argues that the Liaison references cannot anticipate the patents-in-suit because the references are not

10  printed publications, they are not enabling, and they fail to disclose multiple elements of the claims

11  at issue.  With respect to Etilize's motion to amend its answer and counterclaims, CNET argues that

12  a lack of diligent discovery on the part of Etilize and a prejudice to CNET should foreclose the

13  requested amendments.

14

15  LEGAL STANDARD

16  I       Amendment of the Pleadings

17          A party may amend a pleading as a matter of course with leave of court after the period of

18  amending has expired.  Leave should be freely given when justice so requires.  Fed. R. Civ. P.

19  15(a)(2).  The Ninth Circuit has construed Rule 15(a) broadly, requiring that leave to amend be

20  granted with "extraordinary liberality."  Morongo Band of Mission Indians v. Rose, 893 F.2d 1074,

21  1079 (9th Cir.1990); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir.1987) (describing a "strong

22  policy permitting amendment").  Despite this liberal policy permitting amendment, the court may

23  decline to grant leave where there is "any apparent or declared reason" for doing so.  Collaboration

24  Properties, Inc. v. Tandberg ASA, 2006 WL 2398762, 2 (N.D. Cal. 2006) (Patel, J.).

25          In determining whether the court should grant leave to amend, it must consider (1) bad faith;

26  (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the

27  plaintiff has previously amended his complaint.  Nunes v. Ashcroft, 375 F.3d 805, 808 (9th Cir.

28  2004).  Not all of the factors merit equal consideration:  Prejudice is the "touchstone of the inquiry

6

1  under rule 15(a)" and "carries the greatest weight."  Eminence Capital, LLC v. Aspeon, Inc., 316

2  F.3d 1048, 1052 (9th Cir. 2003); Owens v. Kaiser Foundation Health Plan, Inc., 244 F.3d 708, 712

3  (9th Cir. 2001).  Futility of amendment, by itself, can also justify the denial of a motion to amend.

4  Bonin v. Calderon, 59 F.3d 815, 845 (9th Cir.1995), cert. denied, 516 U.S. 1051 (1996).

5  II.   Summary Judgment

6        Summary judgment is proper when the pleadings, discovery and affidavits show that there is

7  "no genuine issue as to any material fact and that the moving party is entitled to judgment as a

8  matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is improper "if the evidence is such that a

9  reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc.,

10  477 U.S. 242, 248 (1986).  The moving party for summary judgment bears the burden of identifying

11  those portions of the pleadings, discovery and affidavits that demonstrate the absence of a genuine

12  issue of material fact.  Celotex Corp. v. Cattrett, 477 U.S. 317, 323 (1986).  "Supporting and

13  opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be

14  admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the

15  matters stated therein."  Fed. R. Civ. P. 56(e).  Where the moving party has the burden of proof on a

16  claim or defense raised in a summary judgment motion, it must show that the undisputed facts

17  establish every element of the claim or defense. Meyers v. Brooks Shoe Inc., 912 F.2d 1459 (Fed.

18  Cir. 1990).

19        Once the moving party meets its initial burden, the nonmoving party must go beyond the

20  pleadings and, by its own affidavits or discovery, "set forth specific facts showing that there is a

21  genuine issue for trial." Id.  Mere allegations or denials do not defeat a moving party's allegations.

22  Id.; see also Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 960 (9th Cir.1994).  All

23  reasonable inferences drawn from the facts must be viewed in the light most favorable to the

24  nonmovant.  Anderson, 477 U.S. at 255; Rodime PLC v. Seagate Tech., Inc., 174 F.3d 1294, 1301

25  (Fed. Cir. 1999).  The essence of the inquiry is "whether the evidence presents a sufficient

26  disagreement to require submission to a jury or whether it is so one-sided that one party must prevail

27  as a matter of law."  Anderson, 477 U.S. at 251-252.

28  III.   Anticipation

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1      Novelty of a claimed invention is an explicit condition for patentability.  35 U.S.C. § 102.

2  Aristocrat Technologies Australia PTY Ltd. v. International Game Technology, --- F.3d ----, 2008

3  WL 4290841, *3 (Fed. Cir. 2008).  Section 102(b) provides that a patent claim is invalid if the

4  patented invention is "described in a printed publication . . .  more than one year prior to the date of

5  the application for patent in the United States." 35 U.S.C. § 102(b); see Schering Corp. v. Geneva

6  Pharm., Inc., 339 F.3d 1373, 1377 (Fed.Cir. 2003).  A patent claim is invalid based on anticipation if

7  "the four corners of a single, prior art document describe every element of the claimed invention,"

8  Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000).

9  Furthermore, such disclosure must be "enabling" in that it must be sufficient to permit a person

10  having ordinary skill in the art to practice the invention.  SmithKline Beecham Corp. v. Apotex

11  Corp., 403 F.3d 1331, 1342 (Fed. Cir. 2005), cert. denied, --- U.S. ----, 126 S.Ct. 2887.  While

12  anticipation is a question of fact, the determination of whether a prior art reference is enabling "is a

13  question of law, although based upon underlying factual findings." Crown Operations Int'l, Ltd. v.

14  Solutia Inc., 289 F.3d 1367, 1376 (Fed. Cir. 2002).  "However, without genuine factual disputes

15  underlying the anticipation inquiry, the issue is ripe for judgment as a matter of law." SmithKline

16  Beecham, 403 F.3d at 1343.

17      A patent is presumed valid and the party asserting the affirmative defense of anticipation

18  must prove the facts to establish invalidity of each claim by clear and convincing evidence. 35

19  U.S.C. § 282.  If this statutory burden is not met, "[c]ourts do not find patents 'valid,' Environmental

20  Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 699 n. 9 (Fed. Cir. 1983), only that the patent

21  challenger did not carry the 'burden of establishing invalidity in the particular case before the

22  court.'" Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1429 (Fed. Cir. 1988).

23

24  DISCUSSION

25  I.     Motion to Amend

26      Etilize seeks to amend its answer and add counterclaims to reflect alleged newly discovered

27  evidence that (1) the patents-in-suit were obtained by willful fraud, (2) the claimed inventions were

28  not patentable in the absence of fraud, and (3) the fraudulently obtained patents-in-suit are being

United States District Court

For the Northern District of California

1   asserted against Etilize.  Etilize argues that the court should grant leave to amend because the

2   proposed amendments are narrow and relate solely to the one topic of "what CNET knew about

3   existing prior art during its prosecution of the patents-in-suit." Def.'s Reply Brief Re Def.'s Motion

4   for Leave to Amend Answer and Counterclaims ("Def.'s Amend Reply"), 1:25.  Etilize asserts that it

5   brought this motion within a month of obtaining the new information.

6         The "new information" upon which Etilize relies to move the court concerns CNET's alleged

7   knowledge of the Liaison technology and technology by Smartshop.com, Inc. ("Smartshop") prior to

8   the filing of the CNET patents-in-suit.  Specifically, Etilize contends that CNET viewed a

9   demonstration of the Liaison technology in 2000 and allegedly indicated an interest in acquiring that

10  technology, by writing in 2005 to the co-founder of Liaison, Dr. Miranker, and indicating that the

11  Etilize technology was "very impressive."  Etilize contends that CNET failed to alert the USPTO of

12  this alleged prior art and also failed to provide any information concerning its knowledge of the

13  Liaison technology during discovery in this litigation in an attempt to hide its inequitable conduct.

14  Etilize argues that these facts support a *Walker Process* claim for enforcement of a patent procured

15  by fraud.  Etilize has proffered no evidence supporting the 2000 allegation regarding the technology

16  demonstration and acknowledges that the 2005 e-mail correspondence came from Dr. Miranker's

17  files.

18        With regard to Smartshop technology, Etilize asserts that Smartshop uses a very similar

19  process to the process that CNET has accused Etilize of infringing in this litigation, the product

20  produced by the Smartshop process was made publicly available in the Fall of 1999, and CNET did

21  not disclose this and other material information it received when it acquired all of the assets,

22  properties and rights of Smartshop on or about May 2002 to the USPTO.  Etilize asserts that

23  depositions taken in June 2008 of the inventors of the patents-in-suit and CNET's current principals

24  revealed this information and the fact that it was "knowingly withheld from the USPTO by the

25  inventors . . . CNET, and CNET's agents and attorney."  Def.'s Motion for Leave to Amend Answer

26  and Counterclaims ("Def's Amend Motion"), 6:1-4.  Etilize argues that these allegedly knowing and

27  willful acts support a *Walker Process* fraud claim.

28        CNET opposes the motion and argues that leave to amend should be denied for three main

9

reasons:  A lack of good cause shown by Etilize, a significant prejudice that would result to CNET, and because the proposed amendment would be futile.  CNET's arguments based on good cause and prejudice flow from Etilize's position that *no further discovery would be required* if the proposed amendments are granted.  Etilize points to its request made in its prior motion to bifurcate (now moot given the court's subsequent denial of that motion) that discovery regarding antitrust issues be allowed to continue after trial on the patent infringement claims.  Etilize also contends that it has sufficient evidence to proceed on the new antitrust theories based on the evidence it currently possesses.  CNET argues that Etilize has not met any burden for amending its affirmative defenses or counterclaims and could not in good faith assert that it could prevail on such defenses and claims without a modification of the court's Scheduling Order.  See Docket No. 86.  Moreover, and irrespective of what Etilize may need, CNET correctly notes that it is entitled to conduct fact discovery on Etilize's serious allegations of *Walker Process* fraud and inequitable conduct.  Such would require a modification of the Scheduling Order.  The court finds Etilize's related allegation that CNET would not be prejudiced by a lack of further discovery on this issue because it could simply obtain necessary information from its employees and prosecuting attorneys absent formal discovery absurd.  It is of no consequence that the requested amendments go to alleged actions focused on CNET's own behavior.  CNET would still require additional discovery to prepare and defend itself against such allegations.  The persons involved in prosecution of the patents-in-suit may not be current CNET employees and, in any event, this court will not force CNET to engage in informal interviewing of persons as suggested by Etilize outside the normal course of fact and expert discovery set forth in the court's Scheduling Order.

The court also considers CNET's argument that the proposed amendments would be futile. Inequitable conduct must be plead with particularity; the accused infringer must present evidence that a person having a duty of candor and good faith made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information with the intent to deceive the USPTO.  37 C.F.R. § 1.56(a); see also Honeywell Int'l Inc. v. Universal Avionics Sys. Corp., 488 F.3d 982, 999 (Fed. Cir. 2007); Cargill, Inc. v. Canbra Foods, Ltd., 476 F.3d 1359, 1363 (Fed. Cir. 2007).  *Walker Process* fraud claims require proof of elements beyond

United States District Court

For the Northern District of California

1  those required to establish the defense of inequitable conduct, with no equitable balancing between

2  the elements.  See Dippin' Dots, Inc. v. Mosey, 476 F.3d 1337, 1342 (Fed. Cir. 2007) (holding that a

3  claimant must make higher threshold showings of both materiality and intent and a strong showing

4  of one cannot make up for a deficiency in the other).  While Etilize need not prove the threshold

5  level of each element—materiality and intent to deceive—by clear and convincing evidence in its

6  motion to amend, a failure to demonstrate much beyond mere conjecture provides no basis for

7  allowing the amendment.  Courts have the discretion to deny a motion to amend a complaint "when

8  the movant presented no new facts but only 'new theories' and 'provided no satisfactory explanation

9  for his failure to fully develop his contentions originally.'" Vincent v. Trend W. Technical Corp.,

10  828 F.2d 563, 570-71 (9th Cir.1987) (quoting Stein v. United Artists Corp., 691 F.2d 885 (9th

11  Cir.1982)).

12        In this case, Etilize argues that there is "new information regarding Liaison prior art."  Etilize

13  fails to describe this information with particularity by merely asserting that Etilize learned of a

14  possible prior connection between CNET and Liaison through Etilize's own expert, Dr. Miranker, a

15  co-founder of Liaison Technology.  As CNET properly notes, Etilize retained Dr. Miranker in 2006.

16  Etilize therefore had access to the 2005 e-mail correspondence at that time.  How that

17  correspondence purportedly evinces any inequitable or fraudulent conduct during the prosecution of

18  the patents-in-suit years earlier is lost on the court.  Likewise, the unsubstantiated allegation that an

19  unidentified CNET agent viewed a demonstration of the Liaison technology in 2000 is neither newly

20  obtained information nor evidence of much of anything.

21        Etilize argues that the Smartshop product catalog demonstrates the existence and public

22  availability on the Internet in 1999 of a product made by a process that was acknowledged by the

23  inventors of the patents-in-suit to be "very similar" to the processes claimed in the '933 and '426

24  patents.  Accordingly, Etilize asserts that evidence of the Smartshop process was material to the

25  patentability of the claims of both patents-in-suit and "[h]ad the USPTO known this information, it

26  would not have granted CNET's patents-in-suit."  Def's Amend Reply 4:5-6.  But, Etilize has

27  offered no connection between the June 2008 depositions, which allegedly revealed the "new facts"

28  to which Etilize wants to confirm its answer and counterclaims, and the contentions that the

11

United States District Court

For the Northern District of California

1    Smartshop technology was materially relevant to the patents-in-suit or that such information was

2    intentionally withheld from the USPTO.  Case law makes clear that inequitable or fraudulent

3    conduct must not amount merely to the improper performance of, or omission of, an act one ought to

4    have performed, but it must be performed by someone with specific intent to mislead or deceive the

5    USPTO.  Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d 1357, 1366 (Fed. Cir. 2008);

6    see also, Praxair, Inc. v. ATMI, Inc., 2008 WL 4378391, *4 (Fed. Cir. 2008) (holding that intent can

7    be inferred when the non-disclosed information is highly material, the applicant knew or should

8    have known of the materiality of the information and the applicant has not provided a credible

9    explanation for the withholding.)

10           Etilize has failed to demonstrate that anyone substantially involved with the prosecution of

11   the patents-in-suit (i.e., someone having a duty of good candor and good faith in dealing with the

12   USPTO) considered the information material, let alone highly material.  There is no evidence

13   proffered that any such person believed the filing of any information beyond the disclosed asset

14   purchase agreement between Smartshop and CNET would not have been cumulative, that it would

15   have established a prima facie case of unpatentability, or that it would have been inconsistent with a

16   position taken during prosecution.  See, e.g., Digital Control, Inc. v. Charles Mach. Works, 437 F.3d

17   1309, 1314 (Fed. Cir. 2006) (detailing the standard for materiality under 37 C.F.R. § 1.56(b) as

18   interpreted by the courts).  Etilize's contention on oral argument that CNET was required to disclose

19   "pre-acquisition papers" to the USPTO, in addition to the "post-acquisition" asset purchase

20   agreement between Smartshop and CNET that was filed during prosecution, merely because

21   Smartshop had "a process to aggregate data using crawlers" is preposterous.  There is simply no

22   evidence in the record to substantiate Etilize's free-floating allegation that there was a need for

23   disclosure; both prongs of materiality and intent to deceive are wholly absent.  The Federal Circuit

24   has provided that the "district court may infer facts supporting an intent to deceive from indirect

25   evidence.  But no inference can be drawn if there is no evidence, direct or indirect, that can support

26   the inference."  Star Scientific, 537 F.3d at 1366.

27           Based on the foregoing, the court finds that Etilize has not put forth a finding of materiality

28   and/or intent to support the proposed amendments.  Accordingly, Etilize has failed to plead a valid

United States District Court

For the Northern District of California

1    defense of inequitable conduct and a valid claim of *Walker Process* fraud.  In sum, the requested

2    amendments are not proper because prejudice to CNET would result, Etilize has not demonstrated

3    good cause, and Etilize has failed to show that it possesses sufficient facts to successfully plead its

4    affirmative defense of inequitable conduct and its counterclaim of *Walker Process* fraud with the

5    required particularity.  The court now turns to defendant's second motion, for summary judgment of

6    invalidity.

7    II.    Summary Judgment

8          In its motion for summary judgment, Etilize's principal argument is that the Liaison CE User

9    Guide describes the methods made available, through the use of the software product Liaison CE, to

10   aggregate and store product information records into a taxonomy based on user-defined directories,

11   including product categories.  Etilize contends that the Liaison CE software as described in the

12   Liaison CE User Guide constitutes an anticipatory reference because each and every claim element

13   of the asserted claims in the '933 and '426 patents is disclosed therein.  Etilize asserts that "the

14   Liaison CE 3.0 product and accompanying User's Guide were available to the public no later than

15   March 19, 2001," more than one year before the earliest claimed priority date of the '933 patent, and

16   therefore the Liaison CE User Guide is a printed publication under 35 U.S.C. sections 102(a) and

17   (b).  See Def.'s SJ Motion 14:18-22.

18         As the party moving for summary judgment, Etilize bears the burden of demonstrating the

19   absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  As the party moving for

20   summary judgment of patent invalidity, Etilize has the burden of proving invalidity by clear and

21   convincing evidence.  35 U.S.C. § 282; American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725

22   F.2d 1350, 1360 (Fed. Cir.1984).  CNET opposes Etilize's motion for summary judgment on the

23   ground that, at a minimum, genuine issues of material fact remain as to whether the challenged

24   claims of the '933 and '426 patents are anticipated by the Liaison art.  First, CNET argues that

25   Etilize has failed to rely on a single reference to describe every limitation of the claims at issue

26   because Etilize cites to a combination of multiple Liaison references in Etilize's claim charts.  See,

27   Def.'s SJ Motion, Exh. A & B.  CNET also raised numerous procedural deficiencies in Etilize's

28   briefs and actions in this litigation, including alleged failures to follow disclosure rules for patent

United States District Court

For the Northern District of California

1   cases in this district.  Second, CNET argues that Etilize improperly relies principally on the

2   declaration and exhibits of its expert witness, Dr. Miranker, for support that the Liaison CE User

3   Guide is a printed publication that was publicly accessible more than one year prior to April 10,

4   2002.  CNET contends that Dr. Miranker's testimony is uncorroborated inventor testimony and

5   cannot establish a publication date based on the facts set forth in his declaration and accompanying

6   exhibits.  Third, CNET argues the Liaison CE User Guide is not enabled.  CNET argues that the

7   Liaison CE User Guide provides a description of how to use a system for acquiring data for use in a

8   structured database, but does not provide such a database, nor programming to make a database nor

9   any other enabling information on how to integrate collected data into an electronic product catalog.

10  Finally, CNET argues that the Liaison references fail to disclose each and every limitation of the

11  asserted claims of the '933 and '426 patents.

12          A.      Disclosure Requirements

13          Etilize's responses to these objections are best considered sequentially.  First Etilize submits

14  that it is relying unequivocally on a single reference—the Liaison CE User Guide.[3]  In so doing,

15  however, Etilize undercuts its own subsequent arguments.  With respect to the use of Dr. Miranker,

16  the court finds that he is a proper witness and his testimony may be considered.  The court will not

17  disregard his testimony solely because of Etilize's failure to disclose Dr. Miranker by name in the

18  Initial Disclosure Statements.  And while the court will not consider the undisclosed Liaison

19  software and products for the purposes of the present motion, neither will the court preclude Etilize

20  from relying on them at trial solely because of Etilize's failure to disclose actual embodiments of

21  that technology in its Final Invalidity Contentions.  These procedural shortcomings are far from

22  inconsequential to the task at hand, however.  Etilize's decision to move for summary judgment on

23  invalidity without having produced the Liaison software or products and by relying on the Liaison

24  CE User Guide to identify and explain the operation of the products is unwise, to say the least.  The

25  Patent Local Rules serve to promote efficient case management and further the positions of the

26  parties and identification of issues and information upon which the court can rely.  Etilize's

27  disclosure failures only weaken its own case.  The Liaison software and products are not before the

28  court.  Dr. Miranker's testimony is uncorroborated.

United States District Court

For the Northern District of California

B.      Corroboration Requirement

While there is no corroboration requirement for expert testimony asserted to defend against a finding of invalidity by pointing to deficiencies in the prior art, corroboration is generally required for testimony that is asserted to invalidate a patent.  TypeRight Keyboard Corp. v. Microsoft Corp., 374 F.3d 1151, 1159 (Fed. Cir. 2004).  CNET's reliance on Hybritech Inc. v. Monoclonal Antibodies, Inc., 802 F.2d 1367, 1377 (Fed. Cir. 1986) to suggest that inventor testimony need be corroborated is somewhat misplaced.  Hybritech is a 102(g) case which necessarily relies on inventors to establish a conception date of the invention, whereas a publication date or an on-sale bar date under 102(b) does not require inventor testimony.  102(b) is not a bar to patentability when the prior use or knowledge is not available to the public.  Accordingly, a potential myriad of witnesses may testify as to a 102(b) date and corroboration thus generally goes to the issue of credibility.  This has been described as the "rule of reason" to the corroboration requirement.  See Woodland Trust v. Flowertree Nursery, Inc., 148 F.3d 1368, 1371 (Fed. Cir. 1998) (noting that corroboration is generally required for oral testimony, but a finding of prior use turns on credibility).  If Dr. Miranker cannot provide the clear and convincing evidence the law requires to establish prior public knowledge and use under 102(b) without sufficient corroboration, due to his potential bias as an inventor, an insufficiency of the exhibits or for other reasons, Etilize will not have met its burden of proof.[4]  Etilize may have chosen unwisely to use Dr. Miranker as its sole witness on summary judgment, but the use of that witness was not improper per se.

C.      Printed Publication Requirement

Whether an alleged anticipatory document qualifies as a "printed publication" under 35 U.S.C. section 102 is a legal conclusion based on underlying factual determinations.  Cooper Cameron Corp. v. Kvaerner Oilfield Prods., 291 F.3d 1317, 1321 (Fed. Cir. 2002).  The key for determining whether a reference constitutes a printed publication is whether the reference was "publicly accessible."  See SRI Intern., Inc. v. Internet Sec. Systems, Inc., 511 F.3d 1186, 1192 (Fed. Cir. 2008).  CNET argues that Etilize has not met its burden of proving that the Liaison CE User Guide was publicly accessible because the press releases and Dr. Miranker's references to customer access do not demonstrate that the document and its accompanying software were disseminated or

15

1    otherwise made available "to the extent that persons interested and ordinarily skilled in the subject

2    matter or art exercising reasonable diligence, can locate it."  <u>Bruckelmyer v. Ground Heaters, Inc.</u>,

3    445 F.3d 1374, 1378 (Fed. Cir. 2006).  This public access requirement demands some sort of public

4    disclosure and it is not satisfied by knowledge or distribution of a prior art reference to a few

5    persons.  See <u>Ralston Purina Co. v. Far-Mar-Co, Inc.</u>, 586 F.Supp. 1176, 1216 (D. Kan. 1984), *aff'd*

6    *in part and rev'd in part on other grounds*, 772 F.2d 1570 (Fed. Cir. 1985).  This inquiry is a fact

7    intensive one that must proceed on a case-by-case basis.

8           In this case, based on the purported printed publication itself, the court finds that a 2001

9    copyright date does not prove the Liaison CE User Guide was publicly accessible prior to April 10,

10   2001, one year before the earliest filing date of the '933 patent.  Nor do any of the Liaison press

11   releases dated in 2000 and 2001 establish that the Liaison CE User Guide was disseminated such

12   that an interested person of ordinary skill could obtain a copy with reasonable diligence.  Dr.

13   Miranker's statement that several other companies bought and used the Liaison software in 2000-

14   2002 and that the Liaison CE User Guide was available with the software is uncorroborated

15   testimony.  Etilize's contention that its proffered evidence should be accepted absent contrary

16   evidence offered by CNET fails to apply to this situation where the credibility of Dr. Miranker's

17   uncorroborated testimony has been placed at issue.  CNET does more than assert that Dr. Miranker's

18   testimony is not to be believed.  CNET argues that Dr. Miranker's uncorroborated testimony offers

19   only a basis for speculation as to why the information proffered might not be accurate or reliable.

20   CNET need not resolve conclusively this issue of material fact in its favor in order to defeat Etilize's

21   motion for summary judgment; a mere showing of the existence of a claimed factual dispute is

22   sufficient to require the resolution of the differing versions of the truth through a trial.  <u>See</u> <u>First</u>

23   <u>National Bank v. Cities Service Co.</u>, 391 U.S. 253, 288-89, <u>reh'g denied</u>, 393 U.S. 901 (1968).  By

24   this standard, summary judgment is not appropriate where the opposing party offers specific facts

25   that call into question the credibility of the movant's witnesses.  <u>TypeRight Keyboard Corp. v.</u>

26   <u>Microsoft Corp.</u>,  374 F.3d 1151, 1159 (Fed. Cir. 2004); <u>see also</u> <u>Lodge Hall Music, Inc. v. Waco</u>

27   <u>Wrangler Club, Inc.</u>,  831 F.2d 77, 81 (5th Cir. 1987) (holding summary judgment especially

28   improper when the declaration alleged to lack credibility is an essential element of the moving

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1   party's case and is not corroborated by other evidence).

2        The evidence Etilize offers in support of the publication access date is based solely on the

3   Miranker declaration and its exhibits and is of no evidentiary value.  In Re Morris Epstein, 32 F.3d

4   1559 (Fed. Cir. 1994) is distinguishable in that the case involves dated abstracts that were submitted

5   by a patent examiner during prosecution of a patent and not inventor testimony asserting a public

6   accessibility date of its own invention.  Etilize gambled by resting its case on this one declarant's

7   testimony addressing one Liaison reference and lost.  The weakness of Etilize's position is both self-

8   inflicted and inescapable.  To the extent that Etilize attempted on oral argument to change its

9   anticipation reference to the Liaison CE software itself, the court does not consider such a volte-face

10  from Etilize's position in its moving papers that the Liaison CE User Guide is the single reference

11  for purposes of anticipation.  If other invalidity grounds are worthy of serious consideration, they

12  must be raised in the moving papers and properly addressed as any other serious argument, with

13  supporting declarations setting forth admissible facts.  Etilize's shifting assertions on oral argument

14  are viewed as no more than the last gurgles of a drowning argument.

15       D.      Enablement Requirement

16       Under the law, anticipation does not require "actual performance" of suggestions in a

17  disclosure.  Rather, anticipation only requires that those suggestions be enabled to one of skill in the

18  art.  See Bristol-Myers Squibb Co. v. Ben Venue Labs. Inc., 246 F.3d 1368, 1379 (Fed. Cir. 2001).

19  In this case, Etilize asserts that the Liaison CE User Guide provides a description of how to use a

20  system for acquiring and assembling data in a database.  CNET argues that it the Liaison CE User

21  Guide is a non-enabling disclosure because it is directed to an audience that does not have an

22  ordinary level of skill in the art and that it provides insufficient information for a skilled person to

23  make and use a system that would perform these functions without undue experimentation.  Etilize

24  responds that the Liaison software itself qualifies as prior art and the existence of the software

25  proves it was made and that the description of the methods to use the system and database are

26  enabling.  The court cannot agree with Etilize's arguments.

27       The court finds that implementing the Liaison "teachings" provided in the Liaison CE User

28  Guide would require the software itself, and the Liaison CE software and products have not been

United States District Court

For the Northern District of California

1    proffered for consideration.  Contrary to Etilize's allegation, it is not CNET's burden to subpoena

2    the Liaison products for inspection.  It is Etilize's burden to disclose the actual embodiments and

3    software products for consideration on summary judgment.  Etilize's failure to do so hurts no one

4    but itself, for the same reason as was identified in the prior consideration of the printed publication

5    requirement.  The Liaison CE User Guide does not qualify as a printed publication under 102(b) on

6    the facts presented.  Likewise, the Liaison CE User Guide is also not enabling on the facts presented.

7    The Liaison CE User Guide cannot be offered as an anticipatory reference that discloses each and

8    every element of the asserted claims in the patents-in-suit if it can only be understood and

9    implemented through the use of the software product Liaison CE.  Etilize argues correctly that the

10   law does not require that the subject of an anticipatory reference actually be made to determine

11   whether the publication is enabling.  See In re Donohue, 766 F.2d 531, 533 (Fed. Cir. 1985).

12   However, this law is inapplicable here, given that Etilize has already acknowledged that the Liaison

13   CE software is needed to carry out the Liaison CE User Guide "teachings."  Etilize cannot have it

14   both ways and now assert that the software is enabling because it has been made.  There is a dearth

15   of evidence to determine either of those contentions by any standard, let alone a clear and

16   convincing one.

17            On the facts presented, the court finds there is not enough evidence in the record to show that

18   the Liaison website was sufficiently advertized or promoted in any meaningful way to enable a

19   person of ordinary skill to locate the site and order the Liaison software and allegedly accompanying

20   Liaison CE User Guide.  There is simply no evidence in the record of purchase records or other

21   documentation of such use by customers before the critical date of April 10, 2001.  Again, the only

22   substantive evidence Etilize has proffered to support these contentions is the declaration and exhibits

23   put forth by the Liaison co-founder Dr. Miranker.  Because the credibility of Dr. Miranker's

24   testimony  has been called into question, it cannot carry the day for a summary judgment motion.

25   See TypeRight,  374 F.3d at 1159; See also, Sartor v. Ark. Natural Gas Corp., 321 U.S. 620, 628-29

26   (1944) (reversing summary judgment where the only evidence in support of the motion was an

27   expert's testimony and there were specific bases for doubting the credibility of that testimony); In re

28   Citizens Loan Sav. Co., 621 F.2d 911, 913 (8th Cir.1980) (recognizing that specific facts tending to

1   discredit a key witness could create a genuine issue for trial).

2

3          Absent any evidence, Etilize's contention on oral argument that "anyone" could practice the

4   patents-in-suit simply by reading the Liaison CE User Guide is nothing more than a free-floating

5   assertion, which is breathtaking in its audacity.  The court should not need to remind practicing

6   attorneys that factual contentions must be supported by competent, admissible and credible

7   evidence.  Invalidity for anticipation requires that there be no differences between the claimed

8   invention and the reference disclosure, as viewed by a person of ordinary skill in the field of the

9   invention.  Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed. Cir.

10  1991).  The relevant inquiry here, therefore, is whether the Liaison CE User Guide "teachings"

11  would have been known by, or would have been obvious to, one of ordinary skill in the art.  In

12  common patent law parlance, the reference must enable one of skill in the art to *make and use* the

13  claimed invention.  See In re Donohue, 766 F.2d at 533.  Etilize has presented no evidence—not

14  insufficient evidence but no evidence whatsoever—that one of ordinary skill in the art could have

15  combined the Liaison CE User Guide's description of the Liaison software with his own knowledge

16  to make it and practice the asserted claims of the patents-in-suit.

17         Moreover, Etilize's use of the wrong conjunctive on oral argument, i.e., that one need only

18  make *or* use the claimed invention is not only belied by the case law, it is also nonsensical on

19  application.  The alleged fact that someone could use a software product with an instruction manual

20  would do no more than show that the product works; it would not necessarily demonstrate that one

21  could carry out the teachings of the patents-in-suit to practice the claimed invention.  An invalidity

22  determination based on anticipation requires literal inclusion of every claim element and limitation

23  in a single prior art reference.  An anticipation analysis is not a wholly unfettered, standardless task

24  to be performed whimsically at the court's discretion but is, in fact, carefully circumscribed by the

25  case law.  To suggest that "anyone," including this court, could perform an element by element

26  comparison of the Liaison "teachings" against the asserted claims of the patents-in-suit ascribes far

27  more power and talent to this court than it has.

28         Even if the court were to be generously charitable and consider that Etilize might have been

United States District Court

For the Northern District of California

1    arguing anticipation by inherency (albeit probably unbeknownst to Etilize), there are still no

2    proffered facts that persons of ordinary skill in the art could have combined the Liaison CE User

3    Guide's description of the invention claimed by the patents-in-suit with his or her own knowledge to

4    make the claimed invention.  Inherent anticipation requires evidence that the "natural result flowing

5    from the operation as taught would result in the performance of the questioned function."

6    Continental Can Co. USA, Inc. v. Monsanto Co., 948 F.2d 1264, 1269 (Fed. Cir. 1991).  "This

7    modest flexibility in the rule that 'anticipation' requires that every element of the claims appear in a

8    single reference accommodates situations where the common knowledge of technologists is not

9    recorded in the reference; that is, where technological facts are known to those in the field of the

10   invention, albeit not known to judges."  Id.  However, without any declaration from a person of

11   ordinary skill in the art, Etilize cannot contend that anything is "necessarily present" in Liaison CE

12   User Guide description that would be so recognized by persons of ordinary skill to result in the

13   performance of the asserted claims of the patents-in-suit.  There are simply no facts in the record,

14   technological or otherwise, to inspire such a finding.  And, unfortunately for Etilize, this court

15   cannot engage in fact-finding on a motion for summary judgment.  Lemelson v. TRW, Inc., 760 F.2d

16   1254, 1260 (Fed. Cir. 1983).  Not only has Etilize failed to satisfy its burden to show that the Liaison

17   CE User Guide is enabling by clear and convincing evidence, but Etilize has failed to show that the

18   Liaison CE User Guide is enabling by any evidence at all.  As such, because a dispute requiring a

19   finding exists as to a material fact, summary judgment is improper.  Id., citing Fountain v. Filson,

20   336 U.S. 681, 683, reh'g denied, 337 U.S. 921 (1949).

21       E.     Additional Considerations

22       The court finds that Etilize introduced insufficient evidence on the issue of a single

23   anticipatory reference to award summary judgment of invalidity on the basis of anticipation.

24   Consequently, a genuine issue of material fact remains as to whether the Liaison references disclose

25   each and every limitation of the asserted claims of the '933 and '426 patents.  Etilize's argument for

26   invalidity due to anticipation based on anything other than the Liaison CE User Guide is reserved

27   and may be brought at trial.  To that end, the court finds it prudent to address one of Etilize's main

28   contentions with regard to invalidity by anticipation, in an effort to best narrow the issues for trial.

United States District Court

For the Northern District of California

1   The contention is one of estoppel.

2       Specifically, Etilize moves to preclude CNET from arguing that there are triable issues of

3   fact with respect to whether the Liaison references anticipate CNET's claims under a theory of

4   estoppel—claim construction estoppel.  Etilize argues that CNET should be prevented from denying

5   that its claims read on the Liaison references "as a consequence of its overly broad infringement

6   theories" made during the earlier claim construction proceedings before this court.  Def.'s

7   Memorandum of Points and Authorities in Support of its Motion for Summary Judgment ("Def.'s SJ

8   Motion"), 2:11.  According to Etilize, as construed by CNET, the asserted claims are so expansive

9   that they read on the "basic crawler and extractor technologies that are ubiquitous in the prior art."

10  Id. at 3:10-11.  However, Etilize's theory of estoppel based solely on infringement contentions that

11  were made during claim construction *but not adopted by the court* is not recognized in the law.

12  Etilize seemingly conflates the affirmative assertion of claim scope made in the court with the

13  disavowal of claim scope for patentability purposes before the USPTO, only the latter of which can

14  give rise to a form of argument-based estoppel known as prosecution history estoppel.  In so doing,

15  Etilize is trying to fit a round peg into a square hole.

16      Prosecution history estoppel is a common law doctrine that prevents a patent holder from

17  attempting to recapture what it surrendered during the prosecution of its patent.  See, e.g.,

18  Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 30-31 (1997).  Such estoppel can be

19  invoked when amendments are made to a claim that meaningfully narrow the scope of the patent to

20  avoid the prior art.  There are multiple steps involved in the inquiry, but as a dispositive matter, "[i]f

21  the amendment was not narrowing, then prosecution history estoppel does not apply." Festo Corp. v.

22  Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344 F.3d 1359, 1366 (Fed. Cir. 2003) (*en banc*).

23  This point seems lost on Etilize in more ways than one.  First, the infringement positions taken by

24  CNET during claim construction did not seek to narrow the claims.  Second, claim construction is a

25  matter of law and the court has ruled on the proper construction of the disputed claim terms.  As a

26  result, CNET's positions are now moot with regard to the present anticipation analysis.[5]  The court's

27  construction of the claims is controlling as a matter of law.  Markman v. Westview Instruments, Inc.,

28  517 U.S. 370, 389-90 (1996).

21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Etilize has wholly misinterpreted the Federal Circuit's axiom "that which would literally infringe if later in time anticipates if earlier." <u>Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.</u>, 246 F.3d 1368 (Fed. Cir. 2001). That law signifies that if the Liaison art infringed CNET's claims, as properly construed by the court, then that same art would render the claims invalid based on anticipation. Whether the Liaison art would meet the limitations of CNET's asserted claim scope, as argued on claim construction and as disputed by Etilize, is irrelevant. The claims must be properly construed, i.e., the meaning of disputed claim terms must be ascertained by the court, *before* any infringement or invalidity analysis can be undertaken. Determining infringement (or invalidity) is a sequential, two step process. "First, the meaning and scope of the asserted patent claims is determined, and then the properly construed claims are compared to the accused product or process." <u>Ranbaxy Pharms., Inc. v. Apotex, Inc.</u>, 350 F.3d 1235, 1239-40 (Fed. Cir. 2003) (citing <u>Cybor Corp. v. FAS Techs., Inc.</u>, 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*)). Unadopted representations made during claim construction have no bearing on a later prior art analysis for purposes of patent validity. To hold otherwise would open the door to unlawfully permitting that which would *not* infringe if later in time to anticipate if earlier.

Notwithstanding its estoppel argument, Etilize concludes there are no genuine issues of material fact with respect to whether the Liaison prior art meets each and every limitation of the properly construed claims. In view of the clear and convincing evidence standard required for invalidity, the court disagrees with Etilize and reminds both parties that the properly construed claims are the claims at issue going forward in this litigation. Any future invalidity positions taken by Etilize should be consistent with the court's present ruling on this matter.

<u>CONCLUSION</u>

For the foregoing reasons, defendant's motion to amend answer and counterclaims is **DENIED**; and defendant's motion for summary judgment of invalidity is **DENIED**.

IT IS SO ORDERED.

Dated: October 22, 2008

_____
MARILYN HALL PATEL
United States District Court Judge
Northern District of California

United States District Court

For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### ENDNOTES

1.      In a prior summary judgment order, this court concluded that the only remaining infringement issue in this case was whether any method or process claims could infringe under 35 U.S.C. § 271(g). See the First Summary Judgment Order. Of the asserted claims, the remaining process/method claims are: claims 1 and 15 of the `933 patent; and claims 1, 14, 16, 20, 23, 24, 39 and 52 of the `426 patent. Thus, Etilize's motion attacks the validity of all of the remaining process/method claims.

2.      The difference between the two correlating steps is insubstantial. Compare "correlating a unique product ID corresponding to an identified product for each of said groups" with "correlating a unique product ID corresponding to the product associated with each of said groups to identify the product." `426 Patent at 40:8–9; 36:31–33.

3.      Etilize points to the claim charts that purportedly identify where each element of claims 1 and 15 of the '933 patent and claims 1, 14, 16, 20, 23, 24, 39 and 52 of the '426 patent is present in the Liaison CE User Guide, noting that additional citations to other Liaison references are supplementary in nature. See, Def.'s SJ Motion, Exh. A & B.

4.      This burden of proof requires Etilize to show that the undisputed facts establish every element of its invalidity claim on summary judgment; supplemental evidence cannot come in by the moving party on a rolling basis.  Etilize seems not to grasp this concept as it offered at oral argument to supplement the record every time a fact was disputed.  This is simply not how the law of summary judgment works.

5.      The only effect of the arguments made by CNET with respect to claim construction is that CNET has preserved its ability to raise those arguments, concerning the scope of disputed claim terms, on appeal.  See, e.g., Singleton v. Wulff, 428 U.S. 106, 120 (1976) (stating the general rule that federal appellate courts only consider issues that were "passed upon below.").