**WINSTON & STRAWN LLP**
Glenn E. Westreich (SBN: 100457)
gwestreich@winston.com
Patrick T. Michael (SBN: 169745)
pmichael@winston.com
Marcus T. Hall (SBN: 206495)
mthall@winston.com
Laura K. Carter (SBN: 244956)
lcarter@winston.com
101 California Street, Suite 3900
San Francisco, CA 94111-5894
Telephone: 415-591-1000
Facsimile: 415-591-1400

Attorneys for Plaintiff & Counterdefendant
CBS INTERACTIVE INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| CBS INTERACTIVE INC., <br><br> Plaintiff, <br><br> vs. <br><br> ETILIZE, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIM. | **Case No. C 06-05378 (MHP)** <br><br> **PLAINTIFF CBS INTERACTIVE INC.'S OPPOSITION TO DEFENDANT ETILIZE, INC.'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS** <br><br> Date: November 17, 2008 <br> Time: 2:00 p.m. <br> Place: Courtroom 15 <br> Judge The Honorable Marilyn Hall Patel |

## I. INTRODUCTION

CBS Interactive Inc., ("CBSi"), formerly known as CNET Networks, Inc., respectfully submits this opposition to Etilize's motion to amend its invalidity contentions.

Etilize's strategic decision not to conduct basic discovery regarding its invalidity claims until nearly a year after filing its Preliminary Invalidity Contentions precludes a finding of good cause to amend its invalidity contentions at this late date. The Patent Local Rules were adopted by the Northern District of California to ensure that parties identify their theories, including their invalidity theories, early on in the litigation. This necessarily presupposes that the parties conduct at least some basic and timely discovery into their claims and defenses, and thus, Patent Local Rule 3-7 requires a showing of "good cause" in order to amend invalidity contentions.

This "good cause" standard prevents parties from waiting until the last minute to disclose evidence they intend to assert in support of their invalidity claims. Yet, this is exactly the situation presented here. Neither the Smartshop nor the WebSphinx reference is "new." Etilize knew or should have known about these references well before now. To the extent they are "recently discovered," such recent discovery can only be attributed to Etilize's lack of diligence. Good cause does not exist where a party seeks to amend its invalidity contentions *after* close of fact and expert discovery *and* where the only plausible explanation for allegedly "recently discovered" facts is the party's failure to conduct basic discovery into its claims and defenses. As explained below, there is no "good cause" for Etilize's dilatory conduct and untimely request to amend its invalidity contentions. Etilize's motion should be denied.

## II. RELEVANT FACTS

### A. Etilize's Lack of Diligence In Conducting Discovery Regarding Smartshop

Etilize's factual recitation asserts that the "Smartshop prior art process was discovered by Etilize after taking the deposition of former Smartshop employees and inventors of the '933 and '426 patents (Messrs. Robin Walsh and Timothy Musgrove) on June 20th and June 23[rd], 2008 respectively." (Etilize's Motion for Leave to Amend its Invalidity Contentions ("Motion for Leave") at 3:1-3). However, Etilize does not advise that it has long known of Smartshop and fails to offer any explanation for why it delayed so long in taking those depositions.

1

For example, the inventors' assignments to American Freeway Inc. d/b/a/ Smartshop.com is documented in the publicly available file history for the '933 patent. (Declaration of Laura K. Carter In Support of CBSi's Opposition to Etilize's Motion for Leave to Amend its Invalidity Contentions ("Carter Decl.") ¶ 3; Exh. A). Similarly, a copy of the asset purchase agreement between CNET Networks, Inc. and Smartshop is included in the publicly available file history for the '426 patent. (Carter Decl. ¶ 4; Exh. B). In addition to being publicly available before this action was even filed, both the assignments and the asset purchase agreement were specifically produced to Etilize in April 2007, pursuant to Patent Local Rule 3-2(c). (Carter Decl. ¶ 5). Moreover, the '933 patent references Smartshop in the specification itself: "For example, the shopping interface known as SMARTSHOP.COM™ can be used in connection with the invention." ('933 patent at 6:43-44).

At a minimum, Etilize has been on notice of Smartshop since April 2007. Yet, for reasons that remain inexplicable in a patent infringement case, Etilize waited until June 4, 2008 – more than a year later and just three weeks before the close of fact discovery – to first request the deposition of the inventors. (Docket No. 163-5). If Etilize did not discover the Smartshop "process" until "after" taking the inventor depositions, Etilize's own delay is responsible for that so-called "recent discovery."

### B. Etilize's Expert Witness on Invalidity Knew of the WebSphinx Technology Years Before Etilize Retained Him

Etilize's factual recitation with respect to the so-called WebSphinx reference also tells only half of the story (at best). Etilize asserts that Websphinx "was discovered by Etilize shortly before Etilize filed its Motion for Summary Judgment of Non-Infringement on June 9, 2008" and its relevance appreciated only after understanding "CNET's infringement theories with respect to aQuire and Xtract." (Motion for Leave at 3:15-21).

As an initial matter, it strains credibility for Etilize to suggest that it did not appreciate until recently that aQuire and Xtract, which are Etilize's own processes, were implicated in this lawsuit. As early as September 5, 2007, in connection with Etilize's motion for summary judgment regarding jurisdiction, the Declaration of Mr. Azhar Hameed states that aQuire and Xtract are implemented in Etilize's process "to obtain and extract information." (Docket No. 37). In addition, CBSi

2

PLAINTIFF CBS INTERACTIVE INC.'S OPPOSITION TO DEFENDANT ETILIZE, INC.'S MOTION FOR LEAVE TO AMEND ITS
INVALIDITY CONTENTIONS; CASE NO 06-05378 MHP

specifically directed document requests and 30(b)(6) topics to the use and functionality of aQuire and Xtract during fact discovery. (Carter Decl. ¶¶ 7 & 10, Exhs. C & F). And Etilize's own motion for summary judgment of non-infringement is based on its use of aQuire and Xtract. (Docket No. 90).

As for Etilize's so-called recent discovery of WebSphinx, Dr. Miranker, Etilize's expert witness since August 2006, has known the details of WebSphinx for years. Dr. Miranker co-wrote a technical report on SPHINX in July 2002 and refereed an article on SPHINX published in June 2004.[1] (Docket No. 211-3). Just last October, the Journal of Intelligent Information Systems published an article on SPHINX co-authored by Dr. Miranker. (*Id.*). Notably, WebSphinx is based on SPHINX, a relationship Etilize certainly recognizes as it has included an article on SPHINX as part of Exhibit 6 to the Khaliq Declaration. (Docket No. 207-3).

Dr. Miranker's deposition testimony also makes clear that Etilize has long known of WebSphinx. As Dr. Miranker, stated at deposition:

> the WebSPHINX program…is out there in a big way….As we saw in my invalidity report…I had encyclopedic knowledge of this area before anybody spoke to me and I'm familiar with people doing this.

(Carter Decl. ¶ 9, Exh. E (August 29, 2008 Deposition of Dr. Daniel P. Miranker ("Miranker Depo.") at 212:25-213:6)).

## III. ARGUMENT

### A. Legal Standard

"Amendment or modification of…the Preliminary or Final Invalidity Contentions, other than as expressly permitted in Pat. L.R. 3-6, may be made only by order of the Court, which shall be entered *only* upon a showing of good cause." Pat. L.R. 3-7 (emphasis added). In determining whether "good cause" exists such that a party should be allowed to amend its preliminary contentions, courts require that the party claiming "good cause" show diligence in amending its contentions "when new information comes to light in the course of discovery." *02 Micro*, 467 F.3d

---

[1] "WebSphinx was inspired by an earlier system SPHINX…WebSphinx is a ground up reimplementation of the SPHINX interface." (Docket No. 141-2, p. 3). Etilize apparently recognizes this relationship as it has included an article on SPHINX as part of Exhibit 6 to the Khaliq Declaration.

3

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5894

at 1366. The party seeking to amend its contentions has the burden to establish diligence. *Id.* (citing *Genentech, Inc. v. Amgen, Inc.*, 289 F.3d 761, 774 (Fed. Cir. 2002).

The inquiry into whether a court should grant a party's request to amend its preliminary contentions first considers whether the party "was diligent in amending its contentions and then considers prejudice to the non-moving party." *The Bd. of Trustees of the Leland Stanford Junior University vs. Roche Molecular Sys., Inc.*, 2008 U.S. Dist. LEXIS 16556, *7 (N.D. Cal., Mar. 3, 2008).

**B.    The Case Law Cited By Etilize Are Inapplicable to the Facts of This Case**

Etilize's legal argument essentially ignores the Northern District's requirement of diligence and instead relies on cases citing "other factors" considered by the Northern District of California in the "'good cause' calculus." (Motion for Leave at 4:6-7). All of these cases are distinguishable from the instant circumstances where Etilize has failed to conduct basic discovery into its invalidity claims and has waited until after close of expert discovery to seek leave to amend.

- In *Lexar Media*, the court found sufficient notice where the contentions were raised at claim construction and acknowledged by plaintiff three years before the accused infringer sought to amend. *Lexar Media, Inc. v. Pretec Elecs. Corp.*, 2007 U.S. Dist. LEXIS 32825 (N. D. Cal. April 18, 2007).
- In *Fresnius*, the court allowed an anticipation defense related to prior art which was identified as relevant prior art for a related patent in suit and where both parties had engaged in "extensive discovery" relating to the defense. *Fresnius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 U.S. Dist. LEXIS 90856 *19-*22 (N. D. Cal. May 15, 2006).
- In *Tessera*, the court granted leave to amend where the accused infringer sought to amend "well in advice [sic] of the deadline for any expert reports that may be effected and briefing on claim construction." *Tessera, Inc. v. Advanced Micro Devices, Inc.*, 2007 U.S. Dist. LEXIS 35957 (N.D. Cal. April 30, 2007).
- In *IXYS*, this Court allowed the accused infringer to rely on a combination of references not specifically identified as invalidating under Patent L.R. 3-3 since plaintiff had significant notice of the references. *IXYS Corp. v. Advanced Power Technology, Inc.*, 321 F.Supp. 2d

4

1133, 1153 n.19 (N.D. Cal 2004).

Likewise, Etilize's reliance on *Nestier Corp. v. Menasha Corporation-Lewisystems Division* in support of its argument that "there is a strong public policy motivation to allow all invalidity defenses to be tried against patents being litigated in district courts" is misdirected. (Motion for Leave at 4:20-24). *Nestier* has nothing to do with "allowing all invalidity defenses to be tried." (*Id.*) *Nestier* addresses the need, or lack thereof, of entering a judgment of validity when non-infringement has been found. *Nestier Corp. v. Menasha Corporation-Lewisystems Div.*, 739 F.2d 1576, 1581 (Fed. Cir. 1984). In *Nestier*, plaintiff appealed, *inter alia*, the district court's decision not to enter judgment on validity, despite the jury's finding that the patent is not invalid, given its entry of judgment of non-infringement. *Id.* at 1578. The Federal Circuit determined that the district court did not abuse its discretion in ***withholding judgment*** on the issues related to the patent's validity. *Id.* at 1580-81. Etilize's reliance on *Nestier* and its attempt to support its public policy argument by misrepresenting the Federal Circuit's holding is wholly improper and only serves to underscore Etilize's inability to meet its burden of proof to show good cause.[2]

### C. Etilize's "Recently Learned" Information Is "New" to Etilize Because of its Lack of Diligence

#### 1. Etilize Has Known of Smartshop.com Since At Least April 2007

Etilize has not been diligent in seeking to amend its preliminary invalidity contentions to include the so-called "Smartshop prior art process." Indeed, Etilize has been woefully remiss in its failure to seek discovery related to Smartshop prior to June 2008. Given its decision to forego inventor depositions until days before fact discovery closed, Etilize cannot seriously argue that the "Smartshop process" constitutes "newly discovered information" as contemplated by the Federal Circuit. See *02 Micro*, 467 F.3d at 1366.

As explained above, if Etilize wanted to investigate the potential to assert Smartshop's own technologies as prior art, Etilize had all the information necessary to conduct that investigation as

---

[2] Etilize obfuscates the holding in *Nestier* by misquoting the decision. Etilize omitted a phrase critical to the court's meaning. The proper cite is: "[t]here is a strong public interest in the elimination of invalid patents ***than in the affirmation of a patent as valid***, at least in part because patents maintain a presumption of invalidity." *Nestier*, 739 F.2d at 1581 (emphasis added to omitted phrase).

early as April 2007. Etilize has yet to give any explanation for its delay in taking the depositions of the inventors and its overall lack of diligence in investigating its invalidity allegations.

Etilize's own "evidence" shows that any lack of knowledge regarding Smartshop is self-inflicted. Etilize's counsel states in his declaration: "I learned of the Smartshop prior art process after taking the depositions of the inventors of [the patents in suit]." (Khaliq Decl. ¶ 1).[3] This statement begs the question: why did counsel wait to inquire about Smartshop until a year after Etilize served its Preliminary Invalidity Contentions and right before the close of fact discovery?

In any case, the timing of Mr. Khaliq's knowledge of Smartshop has no bearing on this motion. The question here for addressing the "good cause" requirement is not when Etilize's counsel decided to seek information about Smartshop but rather whether Etilize was diligent in discovering the information it now claims to be "new." Etilize could have deposed the inventors from which Mr. Khaliq "learned" of the "Smartshop prior art process" more than a year before their noticed depositions. Etilize offers no explanation, nor can it offer a legitimate one, for why it waited until a month after final invalidity contentions were due (May 27, 2008) and just days before the close of fact discovery (June 27, 2008) to take the depositions of the inventors.

Etilize also suggests that it only learned of the "Smartshop process" after deposing the inventors because CBSi did not disclose the Smartshop process to the USPTO and did not provide documents related to Smartshop from the 1999-2002 timeframe. (Motion for Leave at 6:14-24, n.2; Khaliq Decl. ¶ 5). These allegations are simply untrue. CBSi did not withhold anything from the USPTO, and Etilize has produced absolutely no evidence suggesting otherwise. Further, CBSi's production of documents in response to Etilize's requests were timely and included well over 1,000 pages of documents related to Smartshop from the 1999 to 2002 timeframe. (Carter Decl. ¶ 6). CBSi informed Etilize of this fact in writing on September 12, 2008 – three weeks before Etilize filed this motion – in response to the September 5, 2008 letter attached to the Khaliq Declaration as Exhibit 4. (Carter Decl. ¶ 8, Exh. D).

That Etilize has not properly reviewed the documents produced by CBSi in response to its

---

[3] Mr. Khaliq's individual "I learned" statement is curious, though understandable, given that he apparently had little or no involvement in this case until May 2008.

6

PLAINTIFF CBS INTERACTIVE INC.'S OPPOSITION TO DEFENDANT ETILIZE, INC.'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS; CASE NO 06-05378 MHP

document requests comes as little surprise, given Etilize's articulated strategy of litigating this case on the lean. (Docket No. 182, n.1). However, Etilize's attempt to support its diligence argument with false allegations that CBSi has not produced and/or has withheld documents, even in the face of counsel's written confirmation to the contrary, is simply astounding.

Finally, even assuming that Etilize was not dilatory in "discovering" the Smartshop "prior art process" in June 2008, the timing of its motion – after a three month delay and immediately after close of expert discovery – does not evidence diligence in seeking leave to amend. The Federal Circuit affirmed in *02 Micro* that a three month delay between a deposition in which the plaintiff initially learned information supporting a new infringement theory and the filing of the plaintiff's motion to amend its infringement contentions constituted a lack of diligence where plaintiff had no reasonable explanation for the delay. *02 Micro*, 476 F.3d at 1367-68. As in *02 Micro*, Etilize did not seek to amend its invalidity contentions until three months after it "learned" of the alleged prior art and has given absolutely no reason for the long delay in filing its motion. Etilize's motion to for leave to add Smartshop as prior art should be denied.

### 2. Etilize Has Not Been Diligent In "Locating and Analyzing" WebSphinx

Etilize also has not been diligent in seeking to amend its invalidity contentions to include WebSphinx. Etilize claims diligence in "locating and analyzing" the WebSphinx reference, yet admits that it "discovered" WebSphinx *almost a year* after filing its Preliminary Invalidity Contentions. (Motion for Leave at 7:3-4). This extended delay highlights Etilize's *lack* of diligence in searching for and identifying alleged prior art. As with Smartshop, Etilize's dilatory identification of WebSphinx is a direct consequence of Etilize's failure to pursue a basic investigation regarding its invalidity claims until less than a month before close of fact discovery. Etilize provides no explanation for its failure to "discover" WebSphinx before June 2008.

This lack of diligence is even more inexplicable here given that Dr. Miranker, Etilize's expert witness on invalidity, has known about the WebSphinx for years. Again, as set forth above, Dr. Miranker has published articles on SPHINX (the predecessor to WebSphinx), has testified of his "encyclopedic knowledge of this area" and that "the WebSPHINX program…is out there in a big way." (Carter Decl., Exh. E, Miranker Depo. at 212:25-213:6).

7

PLAINTIFF CBS INTERACTIVE INC.'S OPPOSITION TO DEFENDANT ETILIZE, INC.'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS; CASE NO 06-05378 MHP

Etilize also makes the disingenuous argument that it only now identified WebSphinx as alleged prior art because it "appears now, however, that CNET's infringement case is based on…aQuire and Xtract." (Motion for Leave at 719-20). This argument fails for a number of reasons.

As an initial matter, the proper focus of Etilize's invalidity claims is claim construction and this Court's claim construction ruling issued in March 2008, not CBSi's infringement case. If Etilize believed the claim constructions in this case (including the construction of the term "crawler") gave rise to additional invalidity theories and additional prior art references, Etilize had the opportunity (and the obligation) under the Patent Local Rules to amend its invalidity contentions at that time. Ironically, Etilize decided to serve Final Invalidity Contentions for an entirely different reason and without leave of court.

Second, Etilize cannot seriously claim that it did not know that aQuire and Xtract were at issue in this litigation until receiving Mr. Gray's report.[4] As early as September 2007, Etilize itself stated that aQuire and Xtract are automated tools used "to obtain and extract information" in its content production process. (Docket No. 37). In addition, CBSi specifically propounded fact discovery regarding the functionality of aQuire and Xtract. (Carter Decl. ¶¶ 7 & 10, Exhs. C & F). Indeed, Etilize's own motion for summary judgment of non-infringement is based on its use of aQuire and Xtract. (Docket No. 90).

Likewise, Etilize cannot claim that it did not know until recently that "crawler/extractor technology" was at issue in this case. (Motion for Leave at 8:25-27). The term "crawler" has long been at issue in this litigation. If Etilize only recently determined that the WebSphinx reference was relevant that is, again, a result of Etilize's failure to properly investigate its invalidity claims.

Etilize's "discovery" of WebSphinx a year after serving its Preliminary Invalidity Contentions does not show diligence. Nor does Etilize's three-month delay in seeking leave to amend its invalidity contentions to include WebSphinx until after close of expert discovery. See *02 Micro*, 476 F.3d at 1367-68. Etilize's motion for leave to add WebSphinx should be denied.

---

[4] Nor can Etilize claim to have put CBSi on notice of WebSphinx on June 9th when it filed its motion for summary judgment of non-infringement and at the same time argue that it realized it should assert WebSphinx only after receiving Gray's report on July 21st. (Motion for Leave at 7:17-18 and 9:9-11). It is nonsensical to think that Etilize gave CBSi notice of an invalidity claim based on WebSphinx before Etilize determined it should assert such a claim.

8

### D. CBSi Will Be Substantially Prejudiced If Etilize Is Allowed to Amend Its Invalidity Contentions

Etilize has not provided CBSi with adequate notice of its intent to assert Smartshop or WebSphinx as alleged prior art in this litigation. Indeed, Etilize has not submitted proposed amended contentions or claims charts identifying exactly what Etilize intends to assert.

The fact that CBSi has knowledge of Smartshop due to its acquisition in May 2002 has no bearing on Etilize's obligation to disclose its intent to assert Smartshop as prior art. Etilize didn't even broach the possibility that it intended to assert Smartshop as alleged prior art until it filed its motion to amend its answer and counterclaims on July 31, 2008, well after close of fact discovery. (See Docket No. 143).

Regarding WebSphinx, Etilize appears to equate references to WebSphinx in its June 9, 2008 motion for summary judgment of non-infringement and its July 31, 2008 motion for summary judgment of invalidity with providing notice of its intent to assert WebSpinx as allegedly invalidating prior art in this litigation. (See Docket Nos. 90 and 140). Neither of these pleadings refer to WebSPHINX as invalidating prior art, but rather as background information. Significantly, Dr. Miranker's report on invalidity does not identify WebSphinx as allegedly invalidating prior art.

The timing of Etilize's motion for leave to amend its invalidity contentions is questionable given when Etilize allegedly "discovered" Smartshop and WebSphinx. Fact discovery closed on June 27, 2008, after Etilize "discovered" the alleged prior art, and expert discovery closed on September 25, 2008, a week before Etilize filed its motion. Even assuming Etilize was diligent in "discovering" Smartshop and WebSphinx in June 2008, it is pure gamesmanship for Etilize to wait until after close of both fact and expert discovery to file its motion.

In any case, if Etilize is allowed to amend its invalidity contentions to include the Smartshop and WebSphinx references as alleged prior art, CBSi will be deprived of its ability to take discovery related to Etilize's claims that the references are invalidating. CBSi has already provided its expert reports, including its infringement, damages and validity (rebuttal) reports, in accordance with the Court's case management schedule. If the Court allows Etilize to amend its invalidity contentions, CBSi will necessarily be prejudiced if expert discovery is not reopened and additional expert reports

9

PLAINTIFF CBS INTERACTIVE INC.'S OPPOSITION TO DEFENDANT ETILIZE, INC.'S MOTION FOR LEAVE TO AMEND ITS INVALIDITY CONTENTIONS; CASE NO 06-05378 MHP

are not allowed. Even if the Court grants CBSi time to conduct discovery regarding WebSphinx and Smartshop, CBSi will be prejudiced. The additional discovery that will be necessary to address the newly asserted references will certainly cause further delay and expense to the detriment of CBSi.

## IV. CONCLUSION

At least for the above reasons, CBSi respectfully requests that the Court deny Etilize's motion for leave to amend its invalidity contentions.

Dated: October 27, 2008

Respectfully submitted,

WINSTON & STRAWN LLP

By:   /s/ Laura K. Carter
Glenn E. Westreich
Patrick T. Michael
Marcus T. Hall
Laura K. Carter
ATTORNEYS FOR PLAINTIFF &
COUNTERDEFENDANT
CBS INTERACTIVE INC.