UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CBS INTERACTIVE, INC., f/k/a CNET NETWORKS, INC., | No. C 06-05378 MHP |
| Plaintiff, | **MEMORANDUM & ORDER** |
| v. | **Re: Defendant's Motion to Amend Invalidity Contentions; Plaintiff's Motion to Strike Final Invalidity Contentions; and Plaintiff's Motion to Modify the Protective Order** |
| ETILIZE, INC., | |
| Defendant. / | |

    Plaintiff CBS Interactive, Inc., f/k/a CNET Networks, Inc., ("CBSI") filed this patent infringement action against Etilize, Inc. ("Etilize"), alleging infringement of two patents involving methods and systems for compiling product information to create online purchasing and cataloguing systems of goods and services. Now before the court is Etilize's motion to amend its invalidity contentions, to include two items of prior art, and CBSI's motions to strike the final invalidity contentions and to modify the protective order. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

I.    Litigation History

    Plaintiff CBSI is a worldwide media company and defendant Etilize is a company that markets and sells electronic product catalogs. Because the parties' background, the technology at issue and the procedural history of the case have been reviewed in prior orders issued by this court, only a brief summary of the relevant facts is needed here. Further details can be found in prior

summary judgment orders, e.g., <u>CNET Networks, Inc. v. Etilize, Inc.</u>, 528 F.Supp.2d 985 (N.D. Cal. 2007), Docket No. 70, ("First Summary Judgment Order"), <u>CNET Networks, Inc. v. Etilize, Inc.</u>, 2008 WL 4104287 (N.D. Cal. 2008), Docket No. 188 ("Second Summary Judgment Order"), and <u>CNET Networks, Inc. v. Etilize, Inc.</u>, 2008 WL 4666839 (N.D. Cal. 2008), Docket No. 222 ("Third Summary Judgment Order").

On August 31, 2006, plaintiff filed a complaint alleging infringement of United States Patent No. 6,714,933 ("the '933 patent") and its continuation-in-part, United States Patent No. 7,082,426 ("the '426 patent") (together, "the patents-in-suit"). The patents-in-suit generally relate to methods and processes of compiling information about consumer products into catalogued databases for online merchants. On February 7, 2007, Etilize filed its original answer and counterclaims. On March 3, 2008 the court issued a Claim Construction Memorandum and Order. <u>See</u> <u>CNET Networks, Inc. v. Etilize, Inc.</u>, 547 F.Supp. 2d 1055 (N.D. Cal. 2008), Docket No. 82 ("Claim Construction Order"). On March 23, 2007, upon stipulation and leave of court, Etilize filed a first amended answer and counterclaims. The parties engaged in unsuccessful court-sponsored mediation and the litigation continued. On April 30, 2008, following one round of summary judgment motions and a second round of mediation, the parties stipulated to and the court ordered a modification of the case schedule and set forth the following deadlines: May 7, 2008 for Final Infringement Contentions; May 26, 2008 for Final Invalidity Contentions; and June 27, 2008 for close of fact discovery. <u>See</u> Stipulation and Order Modifying the Schedule Set Forth in the Joint Supplemental Case Management Order, Docket No. 86 ("Modified Schedule Order").

On June 9, 2008, Etilize moved for summary judgment that its accused products do not infringe the '933 and '426 patents, either literally or under the doctrine of equivalents. That motion was denied in the court's Second Summary Judgment Order. On July 31, 2008, Etilize moved for summary judgment for invalidity of all asserted claims of the '933 and '426 patents. At the same time, Etilize moved to amend its answer and counterclaims for a second time. The alleged basis for both of these motions was Etilize's late discovery of new facts which came to light during the depositions of Robin Walsh and Timothy Musgrove, two of the inventors of the patents-in-suit. The Walsh and Musgrove depositions were taken shortly before close of discovery, on June 20 and June

2

23, 2008, respectively. The alleged new facts concerned the availability and attributes of the products and services of Liaison Technology, a company founded in 1998 that developed and sold e-commerce software, and of Smartshop.com, Inc. ("Smartshop"), a company whose assets CNET acquired in May 2002.

In its motion to amend its answers and counterclaims, Etilize sought to add an affirmative defense for inequitable conduct and new counterclaims for *Walker Process* fraud due to a failure to provide material information regarding Smartshop's technology to the United States Patent and Trademark Office ("USPTO") during prosecution of the patents-in-suit. As is being argued in the instant motion to amend its invalidity contentions, Etilize then argued that Smartshop developed a process acknowledged by the inventors of the patents-in-suit to be "very similar" to the processes claimed in the '933 and '426 patents. In its Third Summary Judgment Order, the court denied Etilize's motion to amend its answer and counterclaims and held that Etilize had failed to demonstrate, *inter alia*, that the Smartshop technology was materially relevant to the patents-in-suit.

Expert discovery closed on September 25, 2008. Trial is scheduled for February 2009.

II.   Etilize's Motion to Amend Invalidity Contentions

Etilize now seeks to amend its invalidity contentions to include two alleged recently discovered prior art items—Smartshop and WebSphinx. Etilize asserts that it discovered during the depositions of Walsh and Musgrove depositions, both former Smartshop employees, that Smartshop was using a semi-automatic process to aggregate product data with crawlers for a comparison shopping website called Smartshop.com prior to the filing date of the patents-in-suit. See Khaliq Dec. Ex. 5 (Walsh Deposition), 59:2-65:18; 108:15-24; 109:16-22.[1] Etilize alleges that the sale of Smartshop's assets to CNET in 2002 constituted a commercialization by the inventors of the patents-in-suit of Smartshop's products and processes that served to create an "on sale" bar to patentability under 35 U.S.C. section 102.

Etilize asserts that it discovered the WebSphinx technology shortly before it filed its June 9, 2008 motion to summary judgment of non-infringement. See Khaliq Dec. ¶ 7. WebSphinx is open-source software that performs crawler and extractor functions and that has allegedly been in the

3

public domain since 1998. See Khaliq Dec. Exh. 6. Etilize argues that the relevance of WebSphinx was not analyzed by Etilize until plaintiff served a July 21, 2008 infringement expert report which accused software tools aQuire and Xtract of infringing the patents-in-suit. Etilize argues that because plaintiff's infringement contentions now read on common crawler/extractor technologies "that are ubiquitous in the prior art," Etilize should therefore be permitted to assert other common crawlers and extractors as a basis for invalidity of the patents-in-suit.

CBSI opposes the motion and argues that Etilize's failure to conduct timely discovery precludes a finding of good cause to amend its invalidity contentions. CBSI alleges that Etilize has long been on notice of Smartshop, based on multiple references to Smartshop and its relation to plaintiff in the publicly available prosecution file history of the patents-in-suit and in the issued '933 patent specification. See Carter Dec., ¶ 3, Exh. A (copy of inventors' assignment to American Freeway Inc., d/b/a Smartshop.com from file history); ¶ 4, Exh. B (copy of asset purchase agreement between CNET and Smartshop from file history); ¶ 5 (production of assignment and purchase agreement to Etilize in discovery) ; '933 patent at 6:43-44 ("For example, the shopping interface known as SMARTSHOP.COM™ can be used in connection with the invention."). CBSI further asserts that it timely produced documents responsive to Etilize's requests related to Smartshop from the 1999 to 2002 time frame. See Carter Dec. ¶ 6.

CBSI alleges that Etilize has likewise long been aware of WebSphinx, based on the testimony of Etilize's expert witness Dr. Miranker. Id. ¶ 9, Exh. E. (Miranker Deposition), 212:25-213:6. CBSI disputes Etilize's contention that it was not aware that aQuire and Xtract were a main focus of this action prior to July 2008. CBSI points to the fact discovery it propounded on Etilize regarding the functionality of aQuire and Xtract. Id. ¶¶ 7 & 10, Exhs. C & F (notice of deposition and request for production of documents). CBSI also points to Etilize's motion for summary judgment of noninfringement, which rested on the workings of its aQuire and Xtract tools. See Def.'s Motion, Docket No. 90. CBSI asserts that Etilize cannot meet its burden to show good cause when it failed to conduct basic timely discovery into its validity claims and waited until after the close of both fact and expert discovery to seek leave to amend its invalidity contentions to include

4

the Smartshop and WebSphinx references as alleged prior art.  CBSI argues that it will be prejudiced if Etilize is granted leave to amend and expert discovery would need to be reopened.

III.    CBSI's Motion to Strike Etilize's Final Invalidity Contentions

Etilize filed its final invalidity contentions on May 27, 2008 (following a statutory holiday on May 26, 2008) asserting the Liaison Content Exchange and Liaison Express software products and related systems, as well as any installations of same (together, the "Liaison software products"), as prior art under 35 U.S.C. sections 102 and 103.

CBSI asserts that Etilize improperly served its final invalidity contentions without seeking leave of court and without complying with the Patent Local Rules.[2]  Specifically, CBSI alleges that Etilize improperly relied on Patent Local Rule 3-6 and failed to comply with Patent Local Rule 3-7 when it added the Liaison software products as new alleged prior art under 35 U.S.C. sections 102(a)-(b) and 103 in its final invalidity contentions.  CBSI argues that Patent Local Rule 3-6 only permits final contentions without leave of court in limited situations, none of which applies here, and Patent Local Rule 3-7 only permits amendments to contentions upon a showing of good cause and with leave of court, which Etilize did not obtain.  CBSI also alleges that Etilize failed to comply with Patent Local Rule 3-4 because Etilize did not produce each item of the alleged prior art, i.e., the Liaison software products, with its final invalidity contentions and failed to produce the Liaison software until two months after close of fact discovery.  CBSI argues that Etilize's late disclosures have materially prejudiced CBSI's discovery and that Etilize should be precluded from asserting the Liaison software products as alleged prior art in its expert report, on motion for summary judgment or at trial.

Etilize opposes CBSI's motion and argues that its final invalidity contentions were properly served pursuant to the court's April 30, 2008 Modified Schedule Order and that this court has already ruled that Etilize may rely on the Liaison software products at trial.  Additionally, Etilize asserts that its final invalidity contentions satisfied Patent Local Rule 3-7 because Etilize had good cause to amend its contentions to include the Liaison software products that it had presented as part and parcel of its invalidity arguments throughout the action in various motions before the court.  Specifically, Etilize cites its preliminary invalidity contentions, served on June 14, 2007, which

5

1  asserted the Liaison Content Exchange 3.0 User's Guide and the Liaison Express 2.0 User's Guide
2  as prior art under 35 U.S.C. sections 102(a)-(b) and 103, and Etilize's motion for summary judgment
3  of invalidity based on the Liaison User Guide references.  <u>See</u> Khaliq Dec. ISO Opp'n, Exh. 3
4  (Etilize's Preliminary Invalidity Contentions) and Docket No. 140 (Motion for Summary Judgment).
5  Etilize contends that CBSI would not be prejudiced by the final invalidity contentions because
6  adequate notice had been provided throughout the action of Etilize's invalidity contentions with
7  regard to the Liaison software products.  Finally, Etilize states that CBSI now has copies of the
8  Liaison software and that CBSI has deposed Etilize's expert, Dr. Miranker, on his knowledge of the
9  software, and its uses and installations.  Etilize argues that any other technical failures on its part to
10 comply with the Patent Local Rules do not warrant striking Etilize's final invalidity contentions.

11 IV.   <u>CBSI's Motion to Modify the Protective Order</u>

12       In order to protect their respective intellectual property, the parties entered into a protective
13 order on October 16, 2007.  <u>See</u> Stipulated Protective Order, Docket No. 59.  This protective order
14 restricts disclosure of "Highly Confidential—Attorneys' Eyes Only" information or items only to
15 parties' outside counsel, one house counsel and any necessary experts, court personnel and
16 professional vendors.  <u>Id.</u> at § 7.3.  The protective order restricts disclosure and use of "Attorneys'
17 Eyes Only—Source Code" information or items only to parties' outside counsel and any necessary
18 experts and court personnel.  <u>Id.</u> at § 7.5.  The protective order also restricts the use of protected
19 material disclosed or produced in this case by another party or a non-party "only for litigating or
20 attempting to settle this litigation."  <u>Id.</u> at § 7.1.

21       CBSI  contends that Etilize has acquired, disclosed and misused CBSI's confidential
22 information.  Specifically, CBSI contends that Etilize's highest level management has acted in
23 concert with a former CNET customer to engage in efforts to misappropriate plaintiff's confidential
24 information and that Etilize and Etilize Pakistan continue to possess and use such information.
25 CBSI requests a modification of section 7.1 of the protective order to allow CBSI to use the
26 information produced by Etilize in discovery to collaterally pursue claims for trade secret
27 misappropriation in a different forum against Etilize and other parties.
28

Etilize argues that no good cause exists to modify the protective order and that CBSI is engaging in an improper attempt to pre-litigate a hypothetical collateral case in order to unfairly prejudice Etilize before this court.  Etilize contends that nothing in the existing protective order impedes plaintiff from pursuing its alleged claims for trade secret misappropriation.  Specifically, Etilize argues that CBSI fails to show good cause because there is no collateral litigation pending and therefore the potential relevance of the protected materials cannot be deduced.  Etilize further argues that CBSI proposes a wholesale modification of the protective order that could result in a collateral litigant obtaining highly confidential documents that may not be relevant to a proceeding for trade secret violations.  Etilize concludes that CBSI should be precluded from modifying the protective order to use any discovery on trade secret claims until it has filed a complaint for trade secret misappropriation that identifies the trade secret at issue with the necessary particularity as required by California law.

LEGAL STANDARD

I.   Amendment to Contentions

The Northern District of California has adopted a comprehensive set of Patent Local Rules governing patent litigation.  In general, the Patent Local Rules exist to further the goal of full and timely discovery and provide all parties with adequate notice and information with which to litigate their cases.  See Fresenius Medical Care Holdings, Inc. v. Baxter Intern., Inc., 2006 WL 1329997, *4 (N.D. Cal. 2006).  The Patent Local Rules "require both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information comes to light in the course of discovery."  O2 Micro Intern. Ltd. v. Monolithic Power Systems, Inc., 467 F.3d 1355, 1365-1366 (Fed. Cir. 2006).

Under original Patent Local Rule 3-7, a party may amend or modify its final invalidity contentions upon a showing of good cause and by order of the Court.  Patent Local Rule 3-7 provides: "Amendment or modification of the Preliminary or Final Infringement Contentions or the Preliminary or Final Invalidity Contentions, other than as expressly permitted in Patent L.R. 3-6,

7

may be made only by order of the Court, which shall be entered only upon a showing of good cause."

The "good cause" requirement disallows infringement contentions from becoming moving targets throughout the lawsuit. Integrated Circuit Sys., Inc. v. Realtek, 308 F.Supp.2d 1106, 1107 (N.D. Cal. 2004) (Zimmerman, J.). Specifically, with respect to Patent Local Rule 3-7's predecessor rule 16-9(c), this district has stated:

> The patent local rules were adopted by this district in order to give claim charts more 'bite.' The rules are designed to require parties to crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed. Rule 16-9(c) advances this purpose by making it difficult subsequently to revise claim charts through eleventh hour 'discovery' of facts. Unlike the liberal policy for amending pleadings, the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction [and] ensure that litigants put all their cards on the table up front.

Id. (quoting Atmel Corp. v. Info. Storage Devices, Inc., 1998 WL 775115, at *2-*3 (N.D. Cal. 1998) (Smith, J.)).

To effectuate purposes of both transparency and efficiency, the application of the rule turns on: (1) Plaintiff's ability to learn of the additional devices prior to the final infringement contentions date; and (2) prejudice to the parties. This inquiry first considers whether plaintiff was diligent in amending its contentions and then considers prejudice to the non-moving party. O2 Micro, 467 F.3d at 1366-68. The party seeking to amend its contentions bears the burden of establishing diligence. Id. at 1366-67.

Additionally, under Patent Local Rule 3-4, with the invalidity contentions, the party opposing a claim of patent infringement must "produce or make available for inspection and copying" the following:

> (a) Source code, specifications, schematics, flow charts, artwork, formulas, or other documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality identified by the patent claimant in its Patent L.R. 3-1(c) chart; and
> (b) A copy of each item of prior art identified pursuant to Patent L.R. 3-3(a) which does not appear in the file history of the patent(s) at issue. To the extent any such item is not in English, an English translation of the portion(s) relied upon must be produced.

Patent L.R. 3-4.

II.     Modification of Protective Orders

8

1    Generally, protective orders prevent a party from disseminating only that information
2 obtained through use of the discovery process. Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34
3 (1984). Courts have broad latitude under the law to tailor protective orders to prevent disclosure of
4 materials for many types of information, including, but not limited to, trade secrets or other
5 confidential research, development, or commercial information. See Fed. R. Civ. P. 26(c)(7). The
6 Supreme Court has interpreted Federal Rule of Civil Procedure 26(c) as conferring "broad discretion
7 on the trial court to decide when a protective order is appropriate and what degree of protection is
8 required." Seattle Times Co., 467 U.S. at 36 ( "[t]he unique character of the discovery process
9 requires that the trial court have substantial latitude to fashion protective orders."). Accordingly,
10 district courts have inherent authority to grant a motion to modify a protective order where 'good
11 cause' is shown. Phillips ex rel. Estates of Byrd v. General Motors Corp., 307 F.3d 1206, 1213 (9th
12 Cir. 2002). A party asserting good cause bears the burden to show that specific prejudice or harm
13 will result if the motion is not granted. Id. at 1210-11.

DISCUSSION

I.    Motion to Amend Invalidity Contentions

On several levels, Etilize's posture in its motion for leave to amend its invalidity contentions perplexes the court. For one, it is not apparent to the court why Etilize did not request leave of court to amend its final invalidity contentions immediately after the Walsh and Musgrove depositions in June 2008. If that was the time when Etilize discovered the Smartshop processes, the best practice certainly would have been to do so. Etilize does not address this point and the court finds Etilize's silence to be deafening. Instead, Etilize simply provides attorney argument that it "diligently sought to amend its invalidity contentions promptly upon learning the technical details of Smartshop and WebSphinx" while at the same time asserting that CBSI had sufficient notice of both Smartshop and WebSphinx throughout this litigation. Def.'s Reply Brief, Docket No. 234 at 3:8-10.

Second, the court cannot fathom how Etilize could suggest that it only became aware of the fact that plaintiff was broadly accusing aQuire and Xtract of infringing the patents-in-suit upon the filing of plaintiff's July 21, 2008 infringement expert report. Plaintiff has asserted from the outset of

9

the litigation that aQuire and Xtract were implicated in this lawsuit. <u>See, e.g.</u>, Hameed Dec., Docket No. 37 (filed September 7, 2007); <u>see also</u>, Carter Dec. ¶¶ 7 & 10, Exhs. C & F (notice of deposition and request for production of documents). Indeed, the court noticed this basic fact in several of its prior orders. For example, in the court's background facts of its Second Summary Judgment Order, the first sentence in the section entitled "The Accused Product" states: "The accused product, SpeX, is created by Etilize through the use of a pair of software tools called aQuire and Xtract." <u>CNET Networks, Inc. v. Etilize, Inc.</u>, 2008 WL 4104287, *3 (N.D. Cal. 2008). The court then describes both tools in detail, citing the Hameed declaration extensively. Moreover, as noted by CBSI, aQuire and Xtract have been the focus of discovery requests throughout this litigation.

In any event, the court turns to a brisk analysis of the standard by which Etilize may amend its final invalidity contentions. The Patent Local Rules make clear that Etilize may not amend its contentions unless it shows good cause. <u>See</u> Patent L.R. 3-7. The Federal Circuit has interpreted the "good cause" requirement of Patent Local Rule 3-7 to mandate that parties in patent cases must "proceed with diligence in amending [their infringement and invalidity contentions] when new information comes to light in the course of discovery." <u>O2 Micro</u>, 467 F.3d at 1366. The court simply does not find that Etilize was diligent in seeking to amend its final invalidity contentions upon learning the details of Smartshop processes. Etilize obviously believed it was aware of sufficient details regarding Smartshop's technology to plead allegations of inequitable conduct and *Walker Process* fraud in this action several months ago. Etilize's failure to seek leave to amend its invalidity contentions at that time is unjustified by the facts presented.

Etilize's arguments concerning notice do not save its sinking ship and Etilize's reliance on case law holding that notice alone can permit an untimely amendment fail to help Etilize here. Etilize's tortured argument that its prior allegations of fraud served to put CBSI on notice of Etilize's intent to add such art to its invalidity contentions is preposterous. Notice of a future invalidity contention cannot be based on a motion that introduces alleged prior art references for the first time after the close of fact discovery. Moreover, Etilize lost its fraud motion because it failed to demonstrate*, inter alia*, that the Smartshop technology was materially relevant to the patents-in-suit. The Patent Local Rules were designed to prevent the parties from shuffling or re-framing their

theories in reaction to adverse substantive rulings.  See LG Electronics Inc. v. Q-Lity Computer Inc., 211 F.R.D. 360, 367 (N.D. Cal. 2002).  This piecemeal approach to litigation is contrary to the spirit of the Patent Local Rules and will not be countenanced by the court.  Therefore, the court refuses to give Etilize another bite at the apple to argue the relevance of Smartshop's processes in the instant action.

With regard to WebSphinx, Etilize's argument that CBSI's infringement contentions now read on common crawler/extractor technologies "that are ubiquitous in the prior art" and that Etilize should therefore be permitted to assert other common crawlers and extractors as a basis for invalidity of the patents-in-suit is nonsense.  This is not the time to assert other "common" prior art that has never been part of this litigation, that adds nothing new and that provides no direct relevance to the products that are part of this litigation.  The fact that Etilize admits it failed to analyze the relevance of WebSphinx until several weeks after the close of fact discovery serves only to establish one of two premises:  its irrelevance to the merits of this case and/or the dilatoriness of Etilize.

The Patent Local Rules disfavor untimely discoveries that leave the opposing party with little time to conduct discovery on a new theory.  See O2 Micro, 467 F.3d at 1365 ("discovery is designed to allow the defendant to pin down the plaintiff's theories of liability and to allow the plaintiff to pin down the defendant's theories of defense, thus confining discovery and trial preparation to information that is pertinent to the theories of the case.").  The court will not speculate as to whether Etilize's motivations for this late-stage motion are attributable to gamesmanship or mere ineptitude.  A review of Etilize's public policy arguments concerning the public interest in eliminating invalid patents by way of pre-Federal Circuit case law suggests the latter, as does Etilize's use of a pre-Federal Circuit case to advance its latest position that the sale of a business asset invokes an "on sale" bar to patentability.  In either event, the court finds that Etilize's right to amend in good faith is far outweighed by its (and the court's) countervailing duty to avoid prejudicing CBSI through eleventh-hour alterations.  Trial is two months away.

In an effort to clarify the issues for trial, the court finds it necessary to, once again, counsel Etilize on its improper reliance on CBSI's infringement case rather than the court's claim

construction ruling to advance its invalidity contentions. Etilize relies on <u>Bristol-Myers Squibb Co. v. Ben Venue Labs. Inc.</u>, 246 F.3d 1368, 1379 (Fed. Cir. 2001), to bootstrap some sort of invalidity theory based on the positions taken by CBSI in its infringement contentions. Here, Etilize argues that it should be permitted to amend its invalidity contentions to assert that CBSI's claims read on the Smartshop and WebSphinx alleged prior art as a consequence of CBSI's overly broad infringement contentions. In its prior motion for summary judgment based on invalidity, Etilize argued that CBSI should be prevented from denying that its claims read on the Liaison references as a consequence of its overly broad infringement theories made during the earlier claim construction proceedings before this court. Indeed, in both motions Etilize stated verbatim that CBSI's infringement contentions are now so expansive that they read on basic crawler and extractor technologies that are ubiquitous in the prior art. <u>Compare</u> Def.'s Motion for Summary Judgment, Docket No. 140, at 3:10-11 with Def.'s Motion for Leave to Amend Invalidity Contentions, Docket No. 202 at 3:27-28.

      As the court stated in its last order, a theory of invalidity based solely on infringement contentions that were not adopted by the court's claim construction order is not recognized in the law. Etilize is instructed to read the court's section on "Additional Considerations" in its Third Summary Judgment Order. The court is aware that Etilize filed its initial motion papers seeking leave to amend its invalidity contentions prior to the issuance of that order. However, Etilize filed its reply to CBSI's opposition on November 3, 2008, well after the Third Summary Judgment Order was issued. Etilize would have done well to have read that section of the order with the same detail with which it read the portion concerning Etilize's ability to assert Liaison art at trial.

      Accordingly, Etilize's motion to amend its final invalidity contentions is DENIED.

II. <u>Motion to Strike Invalidity Contentions</u>

      For this motion, the court finds that Etilize's right to amend its preliminary invalidity contentions and present its final invalidity contentions outweighs the countervailing duty to avoid prejudicing CBSI through improper alterations. The court agrees with Etilize that its final invalidity contentions were timely served pursuant to the court's April 30, 2008 Modified Schedule Order. However, this court-ordered extension did not in any way obviate or override Etilize's duty to

comply with the additional disclosure requirements of Patent Local Rules 3-3 and 3-4 to adequately identify and produce the alleged prior art, i.e., the Liaison software products or any other documents or things, with its final invalidity contentions.

It is not the court's role to sift through the attorney arguments and filed exhibits with a fine-toothed comb to determine when Etilize came into possession of the Liaison software products and what Etilize did or did not serve to CBSI and on what dates. The facts make plain that Etilize has failed to comply with the Patent Local Rules on numerous occasions. Etilize can hardly dispute this point, and indeed concedes as much in its arguments to the court not to avoid the merits on the basis of "technicalities" and to put substance over form. Suffice to say, the court does not condone Etilize's untimely and unprofessional behavior, and remains perplexed as to why Etilize only delivered to CBSI the Liaison software products well after close of discovery. Certainly, it was not CBSI's burden to subpoena the Liaison software, as the court has already stated. See Third Summary Judgment Order, at 18:1-4 ("[c]ontrary to Etilize's allegation, it is not CNET's burden to subpoena the Liaison products for inspection. It is Etilize's burden to disclose the actual embodiments and software products for consideration on summary judgment."). Rather, it was CBSI's proper right to obtain from Etilize access to copies of each asserted prior art item, along with the source code, specifications and other documentation sufficient to show the operation of the asserted prior art, as required by Patent Local Rules. See, e.g., Patent L.R. 3-4.

Under Patent Local Rule 3-4, the party opposing a claim of patent infringement must "produce or make available for inspection and copying" such cited documents and things. In its motion, CBSI focuses its arguments on Etilize's dilatory production. The facts as presented are not clear as to whether and when Etilize alternatively made available for inspection and copying the Liaison software. See, e.g., Carter Declaration in support of Pl's Supplemental Brief, Exh. D (November 6, 2008 e-mail from Khaliq to Michael referring to inspection copies Etilize made available and which CBSI never opted to inspect). However, the court digresses in this point because, as was the case on summary judgment, the court finds that Etilize's failure to timely produce or make available the asserted prior art ultimately hurts no one but itself. The court does not disregard CBSI's alleged prejudice to its discovery concerning Etilize's invalidity defenses, but

13

1. instead places a pragmatic focus on Etilize's burden with regard to its own fact discovery on
2. invalidity. After all, CBSI as patentee has no duty to come forward with evidence of validity until
3. after the challenger has established a prima facie case of invalidity. See Stratoflex, Inc. v. Aeroquip
4. Corp., 713 F.2d 1530, 1534 (Fed. Cir. 1983).
5.       Although Etilize is correct that the court previously held that Etilize could reply on the
6. Liaison software at trial, the court also held that there is a dearth of evidence to determine whether
7. the Liaison software is actually enabled. And, because Etilize previously conceded that the Liaison
8. software is needed to carry out any of the previously asserted Liaison User Guide's "teachings,"
9. Etilize's burden of establishing invalidity based on anticipation by a clear and convincing standard
10. with regard to any of the Liaison references will be predicated on many of the same facts, or lack
11. thereof. As such, the court finds there is little to be gained from striking Etilize's final invalidity
12. contentions while the underlying Liaison User Guide references remain at play in this case. Whether
13. those contentions will bear out in successful proofs of invalidity is another matter.
14.       Accordingly, CBSI's motion to strike Etilize's final invalidity contentions is DENIED.
15. III.    <u>Motion to Modify the Protective Order</u>
16.       Rule 26(c) of the Federal Rules of Civil Procedure governs protective orders. In the Ninth
17. Circuit, issues concerning the scope of protective orders for confidential information entails a
18. balancing test of the conflicting interests between the protection of Rule 26(c) and the broad
19. mandate of the admissibility of information in discovery conferred by Rule 26(b)(1) of the Federal
20. Rules of Civil Procedure. See, e.g., Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1472
21. (9th Cir. 1992), cert. denied, 506 U.S. 869 (1992) (holding that courts must balance the risk of
22. inadvertent disclosure of trade secrets to competitors against the risk that the protection of such
23. confidential information will impair prosecution of plaintiff's claims).
24.       In this case, CBSI is seeking a broadening of the protective order provision regarding access
25. to and the use of protected material to allow it to use such material in another forum. Specifically,
26. CBSI asserts that it needs to be able to use the information produced by Etilize in discovery to
27. pursue claims for trade secret misappropriation in state court against Etilize and others. In its
28. moving papers, CBSI requests the following modification to section 7.1 of the protective order (the

1  underlined language): "A Receiving Party may use Protected Material that is disclosed or produced
2  by another Party or by a non-party in connection with this case only for litigating or attempting to
3  settle this<u>, or any actual or potential collateral,</u> litigation."

4        CBSI bears the burden to make a showing of good cause to modify the protective order.  In
5  its moving papers, CBSI contends that Etilize schemed to obtain and use plaintiff's proprietary
6  information to build a similar competing product with the objective of stealing plaintiff's customers.
7  CBSI further alleges the existence of an internal Etilize program to gather information by false
8  pretenses to learn about plaintiff's product content offerings and related pricing.  CBSI asserts that
9  Etilize has acted in concert with plaintiff's former customers to acquire and provide confidential
10 information to Etilize Pakistan engineers.  CBSI argues that significant prejudice will result if it is
11 not allowed to use the information produced by Etilize to prevent further misuse and disclosure of
12 CBSI's confidential information that Etilize and Etilize Pakistan continue to use and misuse to this
13 day.

14       Setting attorney argument aside, the discovery documents CBSI cites in support of these
15 contentions do not provide unequivocal evidence of illegal activity in the form of false pretenses.
16 To the contrary, the court finds that some of the documents demonstrate nothing more than standard
17 competitive activity in the form of market intelligence gathering.  However, some of the discovery
18 documents do present a rather questionable use of proprietary information that the court finds
19 satisfies the good cause standard of Rule 26(c) to justify CBSI's motion to use such discovery
20 material to protect itself from harm.  Because the relevant documents are under seal, neither CBSI as
21 moving party nor the court need enumerate or specifically describe the discovery materials that
22 contain such information.  See <u>United States v. Corbitt</u>, 879 F.2d 224, 228 (7th Cir.1989) ("While
23 this Court has recognized that the common law right of access creates a strong presumption in favor
24 of public access to materials submitted as evidence in open court, this presumption should not apply
25 to materials properly submitted to the court under seal."); <u>Phillips ex rel. Estates of Byrd</u>, 307 F.3d
26 at 1213 (holding that the usual presumption of the public's right of access is rebutted when a party
27 attaches a sealed discovery document to a non-dispositive motion).
28

A good cause analysis under Federal Rule of Civil Procedure 26(c) entails a balancing of the needs for discovery against the need for confidentiality. The typical analysis considers whether sufficient cause exists to protect such information from being disclosed to the public. In this case, the disclosure being sought is not as broad as full public disclosure; CBSI seeks a specific modification of one clause of the protective order to permit it to use discovery information from this litigation for the purposes of initiating collateral litigation. All other clauses and provisions of the protective order will stand, including the disclosure restrictions of highly confidential materials to attorneys' eyes only. Etilize is wrong that such a modification would necessarily allow documents to be released wholesale and to a collateral litigant. That is simply not the case. Whether a collateral litigant would ultimately obtain access to the discovery materials is not something this court can even determine. See, e.g., Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1133 (9th Cir. 2003), citing Pub. Citizen v. Liggett Group, Inc., 858 F.2d 775, 781 (1st Cir. 1988); Superior Oil Co. v. American Petrofina Co. of Texas, 785 F.2d 130, 130 (5th Cir.1986) ("Questions of the discoverability in the state litigation of the materials discovered in the federal litigation are, of course, for the state courts").

In the Ninth Circuit, there is a strong policy "favor[ing] access to discovery materials to meet the needs of parties engaged in collateral litigation." See, e.g., Foltz, 331 F.3d at 1131 (reversing a denial of motion to modify protective order for collateral litigation purposes); Beckman Indus., Inc. v. Int'l Ins. Co., 966 F.2d 470 (9th Cir. 1992) (affirming a modification of protective order for collateral litigation purposes); Olympic Refining Co. v. Carter, 332 F.2d 260 (9th Cir. 1964) (reversing a denial of motion to intervene and modify protective order for collateral litigation purposes).

Ninth Circuit precedent also looks to the needs of parties engaged in pending litigation and, in particular, the reliance interests on the protective order of the party opposing its modification. Beckman, 966 F.2d at 475; see also Foltz, 331 F.3d at 1132 ("modification should generally be granted only where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy . . . .") With this guidance, the court considers Etilize's affected legitimate reliance interests in privacy under the protective order. The court finds

16

1  that Etilize has not asserted, much less shown, that its privacy interests will be affected or harmed by
2  the disclosure of any particular documents produced in discovery in a collateral litigation. Certainly,
3  Etilize has not contended that any of its own trade secret information would be exposed. Etilize's
4  sole contention that this court's view of Etilize will be prejudiced is insufficient to justify continued
5  protection of the discovery materials and wholly unrelated to the substance of the modification itself.
6  Etilize has failed to mount the rebuttal showing of good cause for continued protection of the
7  information necessary under Beckman. Mere reliance on a blanket protective order does not justify
8  a refusal to modify it when a reasonable request for disclosure has been made. 966 F.2d at 476.

9  Normally, the court must also weigh the countervailing reliance interest of the party
10 opposing modification against the likelihood that the collateral action is sufficiently related to the
11 instant action, such that a significant amount of duplicative discovery may be avoided by granting
12 the modification request. See Foltz, 331 F.3d at 1133. Contrary to Etilize's allegation, the fact that
13 Foltz involved the motion of a non-party to gain access to sealed documents under a protective order
14 in no way precludes its application of this relevance inquiry. Here, however, since Etilize has failed
15 to present a significant reliance interest, the court's balancing is relatively straightforward. On
16 balance, the court finds that the facts in this case illustrate the concerns that justifiably may prompt a
17 court to modify a protective order to allow the use of discovery material in a collateral proceeding.
18 Id. at 1132 (noting that the district court that issued the protective order makes "only a rough
19 estimate of relevance" to a collateral proceeding). Specifically, the court finds that CBSI has
20 presented a factual showing of good cause for permitting CBSI's modified use of protected material
21 in a limited context and Etilize has failed to meet its rebuttal burden to show good cause that the
22 material should remain protected.

23 Accordingly, CBSI's motion to modify the protective order is GRANTED. The court
24 reiterates that only a modification of limited nature is authorized, however. See infra, Conclusion.
25 At oral argument, the court encouraged the parties to draft an amended modification and present it as
26 a stipulation to the court. After meeting and conferring, the parties stipulated to a modification that
27 the court approved for filing as an addendum. That modification in no manner condones CBSI's use
28 of information gained through discovery in this case other than such use as is necessary in order for

1  CBSI to prepare and file its collateral litigation.  This holding has no application to information
2  gained by CBSI separate and apart from the discovery processes in this litigation.

CONCLUSION

    For the foregoing reasons, the court HEREBY ORDERS that:

(1) Etilize's motion for leave to amend its invalidity contentions under Patent Local Rule 3-7 is **DENIED**.

(2) CBSI's motion to strike Etilize's final invalidity contentions is also **DENIED**.

(3) CBSI's motion to modify the protective order is **GRANTED**.  The protective order entered by this court on October 16, 2007 will be modified by the stipulation the parties presented to the court at the December 4, 2008 oral argument.  The parties will file the stipulation as an addendum to the protective order.

    IT IS SO ORDERED.

Dated: January 5, 2009

MARILYN HALL PATEL
United States District Court Judge
Northern District of California

**ENDNOTES**

1.  To the extent that these facts were in sealed documents, the court finds they are not worthy of sealing.

2. The district's current Patent Local Rules do not apply here since they are effective only for cases filed on and after March 1, 2008. The original Patent Local Rules, effective December 1, 2000, apply to the instant action and all references herein are to the original rules.